## CAPITAL CITY DAIRY ·COMPANY *v.* OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 45.    Argued April 19, 22, 1901.—Decided January·6, 1902.

The judgment of the state court in this case was based upon the consideration given by it to all the asserted violations of the statutes jointly, and hence no one of the particular violations can be said, when considered independently, to be alone adequate to sustain the conclusions of the court below that a judgment of ouster should be entered.

The contention that the statutes of Ohio in question are repugnant to the commerce clause of the Constitution is without merit. Those statutes were, the act of 1884, the act of 1886, and the act of 1890, all referred to in the opinion, and all relating to the sale of drugs or articles of food, and especially oleomargarine.

The Fifth Amendment to the Constitution operates solely on the National Government, and not on the States.

The legislature of Ohio had the lawful power to enact the statutes in question, and so far as they related to the manufacture and sale of oleomargarine within the State of Ohio by a corporation created by the laws of Ohio, they were not repugnant to the Constitution of the United States.

This court, on error to a state court, cannot consider an alleged Federal question, when it appears that the Federal right thus relied upon had not been, by adequate specification, called to the attention of the state court, and had not been considered by it, it not being necessarily involved in the determination of the cause.

THE case is stated in the opinion of the court.

*Mr. Thomas Ewing Steele* for plaintiff in error.

*Mr. E. B. Dillon* for defendant in error. *Mr. John M. Sheets* was on his brief.

MR. JUSTICE WHITE delivered the opinion of the court.

By a law of the State of Ohio, enacted in 1884, it was made the duty of every one manufacturing or exposing for sale any drug or article of food included in the provisions of the act to furnish, on demand, to the person who should apply for and

tender the value of the same a sufficient sample to enable an analysis to be made.    This law is compiled in Bates' Annotated Ohio Statutes, sec. 4200-7.

By the provisions of another statute, enacted in 1886, and amended in 1887, it was made unlawful to sell or offer for sale or exchange any substance purporting, appearing or represented to be butter or cheese, or having either the semblance of butter or cheese, not wholly made of pure milk or cream, salt and harmless coloring matter, unless done under its true name, and it was exacted that each package should have distinctly marked upon it, in the manner pointed out in the statute, the true name of the article and its constituent ingredients.    And it was further forbidden, in the marking, to use any words or combination of words indicating that the article was either butter, cream or dairy product.    This statute is compiled in Bates' Annotated Statutes of Ohio, sec. 4200-30.

In 1890 it was further provided that no person should manufacture within the State, or should offer for sale therein, whether manufactured therein or not, any substance made out of any animal or vegetable oil, not produced from unadulterated milk or cream from the same, in imitation or semblance of natural butter or cheese produced from butter, unadulterated milk or cream.    The terms butter and cheese, as defined in the statutes. were declared to be articles manufactured exclusively from pure milk or cream, or both, with salt, and with or without any harmless coloring matter.

It was provided, however, in this act that nothing therein contained " shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form and in such manner as will advise the consumer of its real character, free from any coloring matter or other ingredient causing it to look like or appear to be butter, as above defined."    This statute is compiled in Bates' Annotated Statutes of Ohio, sec. 4200-13-14.

On May 16, 1894, it was further enacted that "no person shall manufacture, offer or expose for sale, sell or deliver, or have in his possession with intent to sell or deliver, any oleomargarine which contains any methly (methyl) orange, butter

yellow, annotto aniline dye, or any other coloring matter."
Bates' Annotated Statutes, sec. 4200–16.

On January 27, 1893, the plaintiff in error was incorporated
under the general laws of the State of Ohio, "for the purpose
of manufacturing, selling and dealing in oleomargarine, and
the materials and utensils employed in the manufacture, stor-
age and transportation thereof, and all things incident thereto."

Under this charter the corporation thereafter carried on its
business in the State of Ohio.

On April 12, 1898, proceedings in *quo warranto* were begun
in the Supreme Court of the State of Ohio by the attorney
general of that State to forfeit the franchise of said corpora-
tion and for the appointment of trustees to wind up its affairs.
The relief demanded was based on the charge: That the corpo-
ration had "continuously since about the time of its creation,
up to the present day, within this State, . . . offended
against the laws of this State, misused its corporate authority,
franchise and privileges, and assumed franchises and privileges
not granted to it, and has assumed and exercised rights, privi-
leges and franchises specially inhibited by law" in enumerated
particulars. The specifications of the petition are reproduced
in the margin.[1]

---

[1] First charge. Said defendant corporation has, during the times and at
the places aforesaid, manufactured and sold an article in imitation and
semblance of natural butter; which said article was made out of animal
and vegetable oils and compounded with milk or cream and both; which
said article was not then and there in separate and distinct form and in
such a manner as would advise consumers of its real character, and was
not free from coloring matter or other ingredients causing it to look like
and appear to be butter, and said article was not butter, but was an article
made in imitation and semblance thereof.

Second charge. The defendant corporation has, at the times and places
above mentioned, manufactured and has offered and exposed for sale and
has sold and delivered and had in its possession with the intent to sell and
deliver oleomargarine in large quantities—as your relator is informed, in
quantities from ten thousand to twenty thousand pounds thereof daily;
which said oleomargarine contained coloring matter, to wit, annotto and
other coloring matter unknown to relator.

Third charge. The said defendant corporation, during the times and at
the places above stated, has manufactured and sold a substance purported

The defendant answered, its defences being reiterated under seven different headings.   It suffices for the purposes of the issues now before us to summarize the answer as follows:

It traversed all the facts alleged in the petition except as admitted in the answer.   It expressly denied that the corporation had abused or misused its corporate powers.   It admitted that the corporation had been engaged under its charter in the manufacture and sale of oleomargarine.   It denied that any such product had been offered for sale as an imitation of butter and without being plainly marked in conformity with the laws of the State of Ohio and the laws of the United States.   It denied that the corporation had refused to deliver samples of its products to the duly qualified inspector and agent of the State, as alleged in the fourth charge of the petition, and averred that the entire matter alleged in the fourth charge was based upon

---

and appearing to be butter and having the semblance of butter, but which substance was not butter, but was oleomargarine; but the packages, rolls and parcels thereof were not distinctly and durably stamped, or painted, or stenciled, or marked in the true name thereof in the ordinary bold-faced capital letters required by the act of May 17, 1886, entitled "An act to prevent the adulteration of and deception in the sale of dairy products, etc." (83 O. L. 178.)

Fourth charge. Said defendant corporation has refused and still refuses, to deliver and furnish to the duly appointed, qualified and acting inspector and agent of the dairy and food commissioner of this State any sample or quantity of the oleomargarine manufactured by it, although duly demanded by him and the value of the same for a ten-pound package thereof or any other reasonable quantity thereof was tendered it for the analysis thereof, contrary to section 4 of the act of March 20, 1884, entitled "An act to provide against the adulteration of food and drugs," (81 O. L. 67,) and said defendant has refused and still refuses to permit said inspector and agent to enter into its factory for any purpose whatsoever, and has refused and still refuses to permit him to examine or cause to be examined any of the products manufactured by it.

Fifth charge. All of said violations of the laws of this State as set forth in the first, second, third and fourth charges have been made and done by said defendant corporation with full knowledge of the said violations of law and for the expressed purpose and intent of violating said laws and evading the same and for the purpose of deceiving the people of this State and other States as to the real character of its said product, contrary to the act of March 7, 1890, entitled, "An act to prevent deception in the sale of dairy products and to preserve public health." (87 O. L. 51.)

a personal difficulty which happened on one isolated occasion between an officer of the corporation and one of the agents of the dairy and food commissioners " who was not an assistant commissioner."

The answer admitted that for a brief period between January 1, 1898, and March 1, 1898, the corporation had manufactured oleomargarine and colored it with a coloring matter known as annotto, which was entirely harmless ; that this was done in midwinter; that the effect of such use was to give the oleomargarine a yellow color; that the butter made at that period of the year was not naturally yellow, and that therefore the use of the coloring matter did not cause the oleomargarine to look like natural butter ; on the contrary, it was averred that oleomargarine cannot be made so as to look unlike butter unless the manufacturer is allowed to color it ; that all the oleomargarine thus manufactured during the period stated was made not for sale in the State of Ohio, but for sale in other States, and was wholly sent out of the State of Ohio to such other States ; that the statutes of the State of Ohio enacted in 1890 and 1894, above referred to, did not forbid the use in the manufacture of oleomargarine of a harmless coloring matter, but that if they did they were repugnant to the constitution of the State of Ohio and to section 8 of article I of the Constitution of the United States and section 1 of the Fourteenth Amendment of that Constitution.

The answer additionally alleged that as the statutes which it was alleged had been violated imposed criminal penalties, the proceeding in *quo warranto* to forfeit the charter was unauthorized, at least until a previous criminal conviction for the acts complained of had been obtained. The portion of the answer setting up this defence concluded as follows: " And that this proceeding is in contravention of the Constitution of the United States."

A demurrer was filed to the defences, which asserted the repugnancy to the constitution of the State and of the United States of certain of the statutes charged to have been violated, but no action seems to have been taken upon such demurrer.

A reply was filed in which the State substantially reiterated

the allegations of the petition, taking issue with the claim that the company had used only a harmless coloring matter for a short period and in oleomargarine intended solely for sale outside of the State of Ohio. The reply also took issue with the claim that the natural color of oleomargarine was a light yellow, and it was also denied that oleomargarine "cannot be made to look 'unlike' butter, unless the manufacturer is allowed to color it."

The case was heard "upon the petition and answer, testimony, and arguments of counsel." The Supreme Court of Ohio found the averments of the petition to be true, and entered a decree ousting the corporation from its corporate rights, privileges and franchise, adjudging that it be dissolved, and appointing two trustees for the creditors and stockholders of the corporation to wind up its affairs. 62 Ohio St. 350. The court, on the day this opinion was announced, entered an order, which it declared was made a " part of the record of this case," in which it was stated that at the request of the defendant it was certified that in deciding the case the court had found it necessary to consider whether the Ohio act of 1884 providing for the furnishing of samples, that of 1886 as amended in 1887 requiring all oleomargarine to be marked in a specific manner, the act of 1890 forbidding the manufacture and sale of any oleomargarine colored to look like butter, as well as the act of 1894 forbidding the use of coloring matter in oleomargarine, were not repugnant to the third clause of section 8 of article I of the Constitution of the United States conferring upon Congress the power to regulate commerce and to the Fifth and Fourteenth Amendments of that instrument, and that the court had sustained the validity of the statutes, although their unconstitutionality had been asserted by the defendant. A writ of error was allowed by the Chief Justice of the Supreme Court of Ohio.

Before disposing of the controversies presented by the assignment of errors, it is necessary to notice a motion of the defendant in error to dismiss. It is predicated upon the ground that as the court below found the defendant had violated the statute in refusing to furnish samples as required by the law of

1884, this affords adequate support for the judgment of ouster, irrespective of any substantial Federal question.   It is true in the pleadings it was not asserted that the provision of the Ohio law requiring the delivery of samples was repugnant to the Constitution of the United States, but in the certificate made by the Supreme Court of Ohio on the day its opinion was announced, it is certified that for the purposes of the decision of the case it became necessary to determine whether the act of 1884, providing for the delivery of such samples, was repugnant to the Constitution of the United States.   Conceding that the certificate can only serve to aid in elucidating whether a Federal question was presented by the record, and that such certificate cannot independently in and of itself import into the record such a question when not otherwise properly inferable from the record, we do not think the motion to dismiss is well taken.   We cannot, from an inspection of the opinion of the Supreme Court of the State of Ohio, conclude that the judgment of ouster which that court rendered was predicated alone upon the fact that the defendant had failed to deliver samples as required by the statute.   On the contrary, we think the context of the opinion of the court demonstrates that the judgment against the corporation was based upon, not alone the mere failure to deliver the samples, but because of that failure as connected with and explained by the acts of the corporation in continuously, and as declared by the court flagrantly, violating not one but most of the other statutes relied on.   In other words, we think that the judgment of the state court was based upon the consideration given by it to all the asserted violations of the statutes jointly, and hence no one of the particular violations can be said, when considered independently, to be alone adequate to sustain the conclusions of the court below that the judgment of ouster should be entered.   We come then to the principal contention which the record presents, the asserted repugnancy of the before-mentioned statutes of the State of Ohio to the Constitution of the United States.

At the outset, it is apparent that all the statutes assailed, except the act of May 16, 1894, were on the statute books of the State at the date when the provisions of the general incorpora-

tion law of the State were taken advantage of. The question thus at once arises whether the corporation can be heard to assail the validity of the statutes which were in force when it voluntarily caused itself to be incorporated. We do not, however, pursue this thought further, since it is impossible to separate, for the purposes of the questions here arising, the laws existing at the time of the charter from the act of 1894, which was enacted after the incorporation.

The contention that the statutes in question are repugnant to the commerce clause of the Constitution is manifestly without merit. All the acts of the corporation which were complained of related to oleomargarine manufactured by it in the State of Ohio, in violation of the laws of that State, and therefore operated on the corporation within the State and affected the product manufactured by it before it had become a subject of interstate commerce. *Kidd* v. *Pearson,* 128 U. S. 1; *United States* v. *E. C. Knight Co.,* 156 U. S. 1. It results that the plaintiff in error is not in a position to assail the validity of the statutes, because of their supposed operation upon interstate commerce, and we are not called upon to express an opinion respecting the constitutionality of the statutes upon this assumption.

The contention that the statutes in question violate the Fifth Amendment to the Constitution of the United States need not be dwelt upon, as it is elementary that that amendment operates solely on the National Government and not on the States. *Brown* v. *New Jersey,* 175 U. S. 172, 174, and cases cited.

The inquiry then is this: Do the provisions of the Ohio statutes which, allowing the manufacture and sale of oleomargarine when free from any coloring matter or other ingredient causing it to look like or to appear to be butter as defined in the statute, and which, moreover, expressly forbids the manufacture or sale within the State of any oleomargarine which contains any methyl, orange, butter yellow, annotto, aniline dye or any other coloring matter, contravene the Constitution of the United States?

The proposition is that as by the Ohio statutes harmless coloring matter is permitted to be used in butter, the effect of

prohibiting the use of such harmless ingredients in oleomargarine is to deprive the manufacturer of oleomargarine of the equal protection of the laws and to take from him his property without due process of law.

The Supreme Court of Ohio, however, having before it the evidence introduced upon the issues of fact made in the pleadings, held that oleomargarine was an article which might easily be manufactured so as to be hurtful, and thus result in fraud upon and injury to the public, and that the inhibition of the use of coloring matter in oleomargarine was a reasonable police regulation tending to insure the public against fraud and injury. The purpose of the legislature in permitting the use of harmless coloring matter in butter and requiring that oleomargarine be sold in its natural state, was declared not to be for the purpose of discriminating in favor of butter but to provide a ready means by which the public might know that an article offered for sale was butter and not oleomargarine.

It cannot in reason be said, as a mere matter of judicial inference, that such regulations for such purpose were a mere arbitrary interference with rights of property, denying the equal protection of the laws or that they amounted to a taking of property without due process of law. It follows that the legislature of Ohio had the lawful power to enact the regulations. *Gundling* v. *Chicago*, 177 U. S. 183. Indeed, the controversy is governed by the decisions in *Powell* v. *Pennsylvania*, 127 U. S. 678, and *Plumley* v. *Massachusetts*, 155 U. S. 461. In the *Powell* case a statute absolutely forbidding the manufacture and sale in the State of Pennsylvania of oleomargarine was held valid, because designed to prevent fraud. Speaking of the case in *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, this court said (p. 15):

" That case did not involve rights arising under the commerce clause of the Federal Constitution. The article was manufactured and sold within the State, and the only question was one as to the police power of the State acting upon a subject always within its jurisdiction."

In the *Plumley* case, the power of the State, in legislating for the prevention of deception in the manufacture and sale of

imitation butter, was held to extend to the prohibition of the sale of oleomargarine artificially colored so as to look like yellow butter, although brought into Massachusetts from another State.

Applying the principles enunciated in the cases to which we have just referred, it results that the Ohio statutes under consideration, in so far as they relate to the manufacture and sale of oleomargarine within the State of Ohio by a corporation created by the laws of Ohio, were not repugnant to the Constitution of the United States.

We have previously stated that in the answer of the defendant it was asserted that the remedy for the alleged violations of the Ohio statutes whose constitutionality was assailed, was by a criminal proceeding and not by an action in *quo warranto* for the purpose of ·forfeiting the charter of the defendant, and that in said pleading it was averred in general terms that "this proceeding" was "in violation of the Constitution of the United States." Under the assumption that the general reference to the Constitution just adverted authorizes this court to pass upon them, two Federal questions are elaborately pressed upon our attention. They are :

First. That as the acts done by the corporation which are complained of were by the statutes of Ohio made the subject of criminal penalties, such acts could not be availed of as the basis of civil proceedings in *quo warranto* until in any event prior thereto there had been criminal conviction, without denying to the defendant the equal protection of the laws or taking its property without due process of law contrary to the Fourteenth Amendment.

Second. That the appointment of trustees to wind up the affairs of the corporation as a consequence of the judgment of ouster produced not only like results, but also violated the contract clause of the Constitution of the United States, because amounting to an impairment of the obligations of the contract which the charter of the corporation had engendered. It is conceded that the Ohio statute which authorized the proceedings in *quo warranto* for any abuse or misuse of corporate powers, and which empowered the court, if it decreed against

the defendant, to appoint trustees to liquidate the affairs of the corporation, was a part of the general law of Ohio at the time the defendant corporation was organized. The contentions, then, reduce themselves to this, that the contract rights of the corporation arising from the charter were denied and the Fourteenth Amendment to the Constitution was violated because the corporation was subjected to the general laws of Ohio, which became impliedly a part of the charter. Whilst thus to bring the propositions to their ultimate analysis may be wholly adequate to dispose of them, we do not pass upon them, since they do not properly arise for decision on this record.

It is settled that this court, on error to a state court, cannot consider an alleged Federal question, when it appears that the Federal right thus relied upon had not been by adequate specification called to the attention of the state court and had not been by it considered, not being necessarily involved in the determination of the cause. *Green Bay & Miss. Canal Co.* v. *Patten Paper Co.*, 172 U. S. 52, 67; *Oxley Stave Co.* v. *Butler Co.*, 166 U. S. 648, 654, 655, and cases cited. Now, the only possible support to the claim that a Federal question on the subject under consideration was raised below, was the general statement in the answer to which we have already adverted, that, " this proceeding is in violation of the Constitution of the United States." Nowhere does it appear that at any time was any specification made as to the particular clause of the Constitution relied upon to establish that the granting of relief by *quo warranto* would be repugnant to that Constitution, nor is there anything in the record which could give rise even to a remote inference that the mind of the state court was directed to or considered this question. On the contrary, it is apparent from the record that such a contention was not raised in the state court. Thus, although at the request of the defendant below, the plaintiff in error here, the state court certified as to the existence of the Federal questions which had been called to its attention and which it had decided, no reference was made in the certificate to the claim of Federal right we are now considering.

The foregoing considerations are equally applicable to the proposition that the obligations of the contract engendered by

the charter were impaired by the appointment by the court of liquidating trustees. Indeed, though the appointment of such trustees was expressly prayed in the petition, the record does not even suggest that a constitutional question in respect to such appointment was raised or called to the attention of the court below.

<em>Judgment affirmed.</em>