PEOPLE *v.* HINSHAW.

1. CRIMINAL LAW—INSTRUCTIONS TO JURY.
    Even in criminal cases, counsel for the defense should call the
    court's attention to points on which an instruction is desired.

2. PURE-FOOD LAWS—VANILLA EXTRACT—COLORATION—SUFFIC-
    IENCY OF INFORMATION.
    An information charging the coloration of vanilla extract,
    whereby its inferiority was concealed and it was made to
    appear better than it really was, sufficiently alleges the infer-
    iority of the extract.

3. SAME—EVIDENCE—QUESTION FOR JURY.
    Evidence that the presence of coal-tar dye in vanilla extract
    made the extract appear stronger and of greater value than
    it really was, warrants the submission to the jury of the ques-
    tion whether the extract was inferior.

4. SAME.
    Though coal-tar dye is harmless, its use in vanilla extract, mak-
    ing it appear stronger than it really is, is a violation of Act
    No. 193, Pub. Acts 1895, § 3, as amended by Act No. 118, Pub.
    Acts 1897, prohibiting the adulteration of food by coloring,
    whereby inferiority is concealed, or it is made to appear bet-
    ter than it really is. *People* v. *Jennings*, 132 Mich. 662, distin-
    guished

5. SAME—CONSTITUTIONAL LAW—DISCRIMINATION.
    The provision in question is not repugnant to the 14th amend-
    ment to the Federal Constitution, notwithstanding the pro-
    viso that nothing therein shall prevent the coloring of pure
    butter.

Exceptions before judgment from Saginaw; Snow, J.
Submitted November 19, 1903. (Docket No. 235.) De-
cided January 5, 1904.

Emory H. Hinshaw was convicted of violating the
pure-food law. Affirmed.

Respondent was prosecuted and convicted of the unlaw-
ful sale of—

"Extract of vanilla, which was then and there adulterated, within the meaning of Act No. 193 of the Public Acts of the State of Michigan of the year 1895, as amended by Act No. 118 of the Public Acts of the year 1897, in this, to wit, that said extract of vanilla was colored by the addition of a foreign coloring matter, to wit, coal-tar dye, whereby its inferiority was concealed, and whereby said extract of vanilla was made to appear better and of greater value than it really was."

Two errors are assigned: (1) That the court erred in instructing the jury; (2) that the act is unconstitutional as repugnant to the fourteenth amendment of the Constitution of the United States.

*Eugene Wilber*, for appellant.

*Charles A. Blair*, Attorney General, and *Frank A. Rockwith, Jr.*, Assistant Prosecuting Attorney, for the people.

GRANT, J. 1. The instruction complained of is as follows:

"Now, before the inferiority of an article can be concealed, it must be necessarily first ascertained as to whether or not there is an inferiority in the article. If it is an inferior article, and that inferiority is concealed by reason of the addition of foreign substance in this vanilla, and you are satisfied from the proof beyond a reasonable doubt of the fact, then the defendant would be guilty, although he had no knowledge as to the foreign substance being in the bottle."

It appears that no such claim[1] was made on behalf of respondent upon the trial. No request was asked covering the points now raised. The only objections shown by the record to have been made are: *First*, that the title is not broad enough to cover the provisions in the amendment of 1897 (Pub. Acts 1897, Act No. 118); *second*, that the legislature has no power to prohibit and punish acts in themselves

---

[1] *I. e.*, that there was no charge in the information or testimony on the trial to warrant the instruction.

harmless; *third*, that the act is unconstitutional. Even in criminal cases, it is the duty of counsel to call the attention of the court to the points on which an instruction is desired.   *People* v. *Ezzo*, 104 Mich. 341 (62 N. W. 407).

We, however, are of the opinion that the information charges the coloration to make an inferior article appear better and more valuable than it really was, and is sufficient; and also that there was evidence to sustain the allegation. The State chemist testified that the effect of the coal-tar dye was to make the article appear of greater value than it really was, and that people would think it stronger than it really was.   It is true, his testimony was weakened by cross-examination, but not sufficiently to take the question from the jury, especially in view of the fact that no other purpose than to make the article appear better is shown.

2. The use of coal-tar dye being harmless, counsel for respondent insists that the case comes within the rule of the recent case of *People* v. *Jennings*, 132 Mich. 662 (94 N. W. 216).   That case had not been decided when this case was tried.   No such theory was advanced upon the trial.   Even if it were, we, however, think the case is clearly distinguishable from *People* v. *Jennings*.   The color given to lemon extract, which of itself is almost colorless, is no indication whatever of the strength of the extract or its value.   Its color is a mere whim or caprice of the trade, and no more indicates the character and value of the extract than does the coloring matter used to color butter indicate its character and value.   In this case vanilla resembles the color of the bean from which it is produced.   Its strength and value are judged, to some extent at least, under the evidence in this case, from its color.   No other object is apparent from the use of the coloring than to make it appear of a quality better than it really is.

3. It is urged that the act is unconstitutional on account of the proviso "that nothing in this act shall prevent the coloring of pure butter."   This act is similar in its provisions to that involved in *People* v. *Rotter*, 131 Mich.

250 (91 N. W. 167), and *People* v. *Phillips,* 131 Mich. 395 (91 N. W. 616). The constitutionality of such acts was there sustained, and a discussion is unnecessary. *Capital City Dairy Co.* v. *Ohio,* 183 U..S. 238, 246 (22 Sup. Ct. 120), is decisive of the question.

The conviction is affirmed.

The other Justices concurred.