MAZANEC *v.* FLANNERY *et al.*

(*Nashville*, December Term, 1939.)

Opinion filed April 6, 1940.

MURREY & MURREY, of Gallatin, for complainant.

ROY H. BEELER, Attorney-General, and HENRY C. FOUTCH, Assistant Attorney-General, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill filed pursuant to the Uniform Declaratory Judgments Act, sections 8835-8847 of the Code, complainant assails the constitutionality of Chapter 210, Public Acts of 1939.

Complainant is a farmer residing in Sumner County engaged in raising and marketing strawberries. The defendants are C. C. Flannery, Commissioner of Agriculture, and Roy H. Beeler, Attorney-General of the State.

The title of the Act involved is as follows:

"A Bill to be entitled An Act to suppress unfit and fraudulent practices in the grading and marketing of strawberries grown and packed in the State of Tennessee; to define the grades of strawberries packed and offered for market; to provide regulations for the packing and offering of the same for sale; to prescribe and provide means for the enforcement of this Act; to provide revenue for the enforcement of this Act; and to provide penalties for the violation thereof."

The preamble to the Act recites that it was proposed by the strawberry growers of the State, and that a similar act passed by the Legislature of Louisiana has operated effectively in improving the grade and quality of strawberries produced and marketed.

By section 2 of the Act three grades of berries are defined which conform to the requirements of the United States standards.

Section 3 provides for the inspection of berries and the stamping of the name and address of the packer on every closed package.

128

By section 6 the Commissioner of Agriculture is charged with the enforcement of the Act, including inspection, and is authorized ''to charge reasonable fees designed to cover the cost of these services, which fees together with all money collected in the enforcement of this Act may be re-expended by him for the purpose of this Act.''

By other provisions of the Act the packing and selling of adulterated or misbranded berries in closed packages is prohibited.

The violation of the Act is declared to be a misdemeanor punishable by a fine of not less than $5 nor more than $25 or thirty days in jail for the first offense, with increased punishment for subsequent violations of the Act.

The purpose of such statutes is thus stated in 32 C. J., 930, as follows:

''Inspection laws ordinarily have for their object the improvement of quality and the protection of the community against fraud and imposition in the character of the article received for sale or to be exported, and thereby to promote the public health, safety, and welfare. Otherwise stated the object of inspection laws is to protect the community so far as they apply to domestic sales, from frauds and impositions; and in relation to articles designed for exportation, to preserve the character and reputation of the state in foreign markets.''

In *Detweiler* v. *Welch*, 9 Cir., 46 F. (2d), 75, 76, 73 A. L. R., 1440, 1443, the Circuit Court of Appeals, with regard to this character of legislation, said:

''While Congress has the exclusive power to regulate interstate commerce, it is well settled that in the absence of congressional action in conflict therewith, a state in the exercise of the police power may adopt legislation designed to promote the public welfare, and to

that end may make regulations relative to the disposal of the products of the state, even though such regulations may incidentally or indirectly affect interstate shipments. *Minnesota Rate Cases,* 230 U. S., 352, 33 S. Ct., 729, 57 L. Ed., 1511, 48 L. R. A. (N. S.), 1151, Ann. Cas., 1916A, 18; *Sligh* v. *Kirkwood,* 237 U. S., 52, 35 S. Ct., 501, 59 L. Ed., 835; *Armour & Co.* v. *North Dakota,* 240 U. S., 510, 36 S. Ct., 440, 60 L. Ed., 771, Ann. Cas., 1916D, 548; *Savage* v. *Jones,* 225 U. S., 501, 32 S. Ct., 715, 56 L. Ed., 1182; *Field* v. *Barber Asphalt Pav. Co.,* 194 U. S., 618, 24 S. Ct., 784, 48 L. Ed., 1142; *Reid* v. *Colorado,* 187 U. S., 137, 23 S. Ct., 92, 47 L. Ed., 108; *Capital City Dairy Co.* v. *Ohio,* 183 U. S., 238, 22 S. Ct., 120, 46 L. Ed., 171; *Plumley* v. *Massachusetts,* 155 U. S., 461, 15 S. Ct., 154, 39 L. Ed., 223; *Jackson* v. *Cravens* (D. C.), 235 F., 212; *State* v. *McKay,* 137 Tenn., 280, 193 S. W., 99, Ann. Cas., 1917E, 158.''

In that case the court sustained the validity of an Idaho statute providing for the grading, inspection, branding and marketing of potatoes.

Subsection (b) of section 2 of the Act in question contains the proviso ''that the foregoing standards for U. S. No. 1 and U. S. No. 2 strawberries, and all tolerances, variations, definitions of terms, marketing descriptions of pack, and interpretations pertaining thereto shall be and remain in conformity with promulgations now issued, or which may hereafter be issued by the Commissioner of Agriculture of the State of Tennessee or the Bureau of Agricultural Economics or any other competent subdivision of the U. S. Department of Agriculture.''

It is insisted that the foregoing constitutes a delegation of legislative authority to the Commissioner of Agriculture in violation of the following provisions of Article 2 of the State Constitution:

130

"Section 1. The powers of the Government shall be divided into three distinct Departments: The Legislative, Executive and Judicial.

"Sec. 2. No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

It is doubtful whether complainant has any right to question this provision of the Act since it does not appear that the Commissioner of Agriculture has issued any promulgations subsequent to the enactment of this law.

In *House* v. *Creveling,* 147 Tenn., 589, 604, 250 S. W., 357, 361, it is said:

"We have heretofore noted that certain legislative powers are customarily given to administrative officers. Whether the power here conferred on the Commissioners is in contravention of section 1 and section 2 of article 2 of the Constitution is a question that does not arise on this record. It will be time enough to determine this question when it is raised by some removed officer or employe or other person adversely affected."

█ Obviously the purpose of the quoted provision is to enable the Commissioner of Agriculture to make rules or issue promulgations in order to conform to those issued by the United States Department of Agriculture; otherwise, as pointed out in *Detweiler* v. *Welch, supra,* there would be a conflict with respect to interstate shipments, in which event the orders of the Federal agency would prevail. Since there are no promulgations the court cannot say that such as may be issued in the future will fall within the constitutional prohibition rather than come within the authority of the Commissioner of Agriculture to promulgate rules and regulations for the ad-

ministration of the Act. This question was directly passed upon by the Supreme Court of Idaho in *Marshall* v. *Department of Agriculture*, 44 Idaho, 440, 258 P., 171, the court holding that the authority granted the Department of Agriculture to put the statute in operation by fixing the necessary grades and standards was not a delegation of legislative authority, citing 12 C. J., 845; *Bailey* v. *Van Pelt*, 78 Fla., 337, 353, 82 So., 789; *Pierce* v. *Doolittle*, 130 Iowa, 333, 106 N. W., 751, 6 L. R. A. (N. S.), 143; *State* v. *Atlantic C. L. R. Co.*, 56 Fla., 617, 47 So., 969, 32 L. R. A. (N. S.), 639; *Williams* v. *Evans*, 139 Minn., 32, 165 N. W., 495, 166 N. W., 504, L. R. A., 1918F, 542; *Union Bridge Co.* v. *United States*, 204 U. S., 364, 27 S. Ct., 367, 51 L. Ed., 523; *United States* v. *Grimaud*, 220 U. S., 506, 31 S. Ct., 480, 55 L. Ed., 563.

█ █ It is next insisted that the power conferred upon the Commissioner of Agriculture to collect fees to cover the cost of service is likewise a delegation of legislative authority. The Legislature has limited the fees to the actual cost of administering the Act and delegates to the Commissioner the authority to ascertain what such cost is.

In 32 C. J., 934, 935, with respect to such fees, it is said:

"As an incident to its power to enact valid inspection laws, a state may impose a reasonable fee or charge for the purpose of defraying the expenses of inspection, and such a fee is not a tax. The fixing of the amount of such fees is a legislative power which may be delegated when it seems advantageous to do so."

Upon this question the Supreme Court of Illinois, in *People* v. *Harper*, 91 Ill., 357, 369, said:

"The expenses of inspection must necessarily vary, to some extent, from time to time, with the changes in the price of labor, office rent, fuel, lights, stationery, etc.,

and the amount to be received at a given rate per cent for inspection fees must also necessarily vary in proportion as the quality of grain to be inspected, from time to time, increases or diminishes. And hence an arbitrary permanent rule, as one by statute would have to be, would be liable either to produce less than the inspection expenses demanded, or an excess which would not be needed, and which would therefore, to that extent, be an unjust imposition on those paying the fees. It would seem obvious that anything like a fair approximation to an adjustment of the fees to the expenses could only be made upon thorough local knowledge, and by changing the rate per cent of fees to be paid, from time to time, and as often as experience should prove to be necessary to correspond with changes in expenses and the fluctuations in the quantity of grain to be inspected. The delegation of this legislative function may therefore well be regarded as a necessary incident to the exercise of this branch of the police power of the government.''

A similar conclusion was announced by the Supreme Court of Louisiana in *Louisiana State Board of Health v. Standard Oil Co.*, 107 La., 713, 31 So. 1015.

It is finally contended that the provision of the Act authorizing the Commissioner of Agriculture to enter and inspect ''every place within the State of Tennessee where strawberries are produced, packed, or stored for sale, shipped, delivered for shipment, offered for sale, or sold,'' Sec. 6(a) violates Article 1, Section 7, of the Constitution, which provides: ''That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures.'' This prohibition of the Constitution is not applicable to inspection laws such as we are now considering.

In 56 C. J., 1154, it is said:

"The term 'search,' as applied to searches and seizures, is an examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged."

It will thus be seen that the authority to inspect does not come within the foregoing definition and is not related thereto. Inspection laws have been sustained under the police power of the State ever since *Gibbons* v. *Ogden,* 9 Wheat., 1, 6 L. Ed., 23, 71, decided more than a century ago. Many of the authorities so holding are cited and approved by this court in *State* v. *McKay,* 137 Tenn., 280, 193 S. W., 99, Ann. Cas., 1917E, 158. There is no conflict in these two constitutional provisions.

The defendants demurred to the bill filed herein upon the ground that the involved Act is constitutional. The chancellor sustained the demurrer and dismissed the bill, and for the reasons stated herein we affirm his decree.