STATE OF NEBRASKA V. SWIFT & COMPANY ET AL.

FILED APRIL 24, 1909.   No. 15,750.

Pure Food Law: VIOLATION. S. & Company, a corporation, cured hams and sides of bacon for food at its packing house in South Omaha. To preserve their value as food products, prevent shrinking by evaporation, and protect them from dust, dirt and insects, part of them were wrapped with cloth and paper, and each package was correctly branded as to contents. The packages were shipped to Lincoln, Lancaster county, Nebraska, and a ham and side of bacon were there sold by a distributing agent at their actual gross weight to a customer, who purchased them in that form in preference to purchasing unwrapped meats, which were also on sale at the same place, and for the same price. *Held*, That the transaction was not a violation of the provisions of chapter 63, laws 1907, commonly known as the "Pure Food Law," as it stood prior to the amendment of 1909.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*F. M. Tyrell* and *C. E. Matson,* for plaintiff in error.

*T. J. Mahoney* and *J. A. C. Kennedy, contra.*

BARNES, J.

The state prosecuted Swift & Company, a corporation, and William Huxtable in the district court for Lancaster county for a violation of the provisions of subdivision

3, sec. 8, ch. 63, laws 1907, commonly known as the "Pure Food Law." The information contained two counts. The first count reads as follows: "Frank M. Tyrrell, county attorney of Lancaster county,   *   *   *   gives the court to understand and be informed that Swift & Company, a corporation, and William Huxtable, late of the county aforesaid, on or about the 23d day of October, A: D. 1907, in the county of Lancaster and state of Nebraska aforesaid, then and there being, did then and there unlawfully sell, for use, in the state of Nebraska, one ham, in package form; said package not having been put up by a retailer, and said package being other than canned goods, 'and not having the weight or measure correctly stated on the outside of the package; said package contained an article of food, to wit, one ham." The second count was in all respects like the first, except that it charged the sale of one piece of bacon in package form. The defendants filed a written answer to the information, which contained a plea of not guilty and a general denial. It also contained other matters of defense which we omit from this opinion. A jury was impaneled, and at the close of all of the evidence they were instructed by the court to find the defendants not guilty. Thereupon such a verdict was returned, and the defendants were discharged. Exceptions were duly noted by the prosecuting attorney, ,who now brings the case to this court for review under the provisions of sections 483 and 515 of the criminal code.

It is contended that the district court erred in directing the jury to return a verdict for the defendants. This requires us to examine the evidence preserved in the bill of exceptions. It appears that E. C. Matson, the first witness for the state, identified the wrappings of the ham and bacon in question, and stated that the weight of those found on the ham was six ounces, and the weight of the wrappings of the bacon was five ounces. On cross-examination he testified that the wrapping on the ham was composed of two sheets of paper and a gauze cloth, called "cheese cloth"; that the cheese cloth was next to

the ham; that outside of this was the thicker sheet of paper, and outside of that was a harder and thinner sheet of paper, bearing a label on which appeared "Swift's Premium Skinned Ham. Swift & Company, U. S. A."; that there was also another label reading, "U S. A. Inspected and packed under the act of congress, June 30, 1906. Establishment, No. 3-B"; that there were similar labels upon the bacon, except that the word "bacon" was used instead of "ham." He further testified that the contents of the wrapper identified as exhibits A. 1, 2 and 3 were in fact ham, and that the wrappings had been on the ham and bacon before he weighed them; that they were weighed within two minutes after taking them from the meat. The second witness was one John Sandolovitch. He testified that he was a retail meat dealer in Lincoln; that he saw the wrappers in question at the market of Swift & Company in Lincoln, where he purchased the ham and bacon which were contained therein; that he paid 20 cents a pound for the bacon and 13 cents a pound for the ham; that the ham and bacon in question were sold to him by the defendant Huxtable, agent of Swift & Company, in Lincoln, Lancaster county, Nebraska; that at the time of his purchase the weight was not marked on the outside of either package, and that they were not canned goods; that Swift & Company are wholesalers, and not retailers. He further testified that the ham with its wrappings was not in package form; that it was just the form of the ham wrapped up. On cross-examination he testified that in buying the ham and bacon it was weighed to him, and the price which he paid was computed on the actual weight of the meat and wrappings. He further testified that the defendants carried both covered and uncovered meat for sale; that he has bought both kinds; that he preferred the wrapped meat; that the wrappings or coverings served to prevent shrinkage and kept the meat cleaner, more sanitary and more palatable. The foregoing is the substance of all of the evidence introduced by the state.

The defendants by their evidence explained the methods of wrapping and preserving meats practiced by Swift & Company; and by expert witnesses proved conclusively that it was not practicable to place the weight of a ham or piece of bacon on the outside of the wrapping because the natural shrinkage of the meat renders it impossible at any subsequent period of time to even give a correct estimate of its then net weight. Without further discussion of the evidence, it may be said that it was shown beyond question and without dispute that on the 23d day of October, 1907, the defendants sold one ham and one piece of bacon wrapped up with the material above described; and that upon the outside of the wrapping there was no statement whatever respecting the weight, but there was a true and correct statement as to the contents; that the two pieces of meat were actually weighed to the customer and sold by the pound, according to their actual weight, including the wrappings; that it was open to the customer to have purchased unwrapped goods if he saw fit; that the wrapping is useful for the protection and preservation of the meat against dirt, insects and deterioration through evaporation; that the quality of the meat is preserved by the process of wrapping, and the trade demands wrapped goods; that because of the shrinkage constantly going on, if hams and bacon are weighed separately immediately before wrapping and the net weight marked on the outside of the wrapper, that weight will not be correct at any time thereafter, and, in the event of a sale of the article at any subsequent time showing the branding placed thereon at the time of wrapping as the correct net weight of the contents, the dealer would thereby be guilty of a violation of the federal pure food law of 1906, which expressly provides that, if any weight is stated, it must be correct or the vendor is subject to penalty; that hams and bacon vary in their rate of shrinkage, and it is impossible for the vendor at the time of sale to make an accurate computation of the shrinkage from the date of wrapping based upon any fixed rate; that

it is impossible for the vendor at the moment of sale to weigh the meat and wrapping together, and then make a deduction of any fixed amount of the wrapping, and note the balance as the weight of the contents, because the different sheets of paper taken out of the same bale and of the same size vary in weight, and the amount of fat and moisture absorbed by the paper in a given time varies with different hams and with different papers; that the cost to the packer of the material and labor in the wrapping is an average of 15 cents a pound, whereas the prices at which the defendants sold in this instance were 13 cents a pound for the ham and 20 cents for the bacon.

It appears that the district court, finding no conflict in the evidence, was of the opinion that hams and bacon wrapped in the manner disclosed in this case are not "packages" within the meaning of that term as used in the statute; that the purpose of the act indicates that the term "package" was intended to apply to such articles of food as are put up in artificially determined sizes or quantities, each parcel intended to pass without weighing or measuring as of a given weight or quantity; and that, as ham and bacon wrapped as shown in this case are in natural rather than artificial sizes, necessarily varying in weight and quantity, and never sold as of any fixed weight or quantity, they are not packages within the meaning of the statute. It further appears that the trial court considered and commented on several other questions presented by the record, but his final disposition of the case was based on that part of his opinion above quoted. Now, if he was correct on this point, the exceptions of the state must be overruled.

The section of the act on which this prosecution was based reads in part as follows: "Section 8. The term 'misbranded' as used herein, shall apply to all drugs, malt, spirituous or vinous liquors, or articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design or devise regarding such article, or the ingredients or substances

contained therein which shall be false or misleading in any particular, and to any food or drug product, \* \* \* which is falsely branded as to the state, territory, place or country in which it is manufactured or produced. That for the purpose of this act an article shall also be deemed to be misbranded: \* \* \* In the case of food, \* \* \* if sold for use in Nebraska and in package form other than canned goods, contents, weight, or measure are not correctly stated on the outside of the package."

It must be conceded that the word "package" is at best a vague term, and liable to various interpretations. It is well known that many articles of food are packed, bound or put together in sizes determined by the manufacturer, and intended to pass in trade from hand to hand as of a given weight or measure. For example: Butter put up in bricks, intended to represent one pound each; strawberries packed in boxes, supposed to hold a quart each; teas and coffee put up in paste-board boxes, intended to pass as weighing one pound each, and so on through a great variety of foods. These are strictly packages within the meaning of the law. They are packed or put together, collected and made into forms and sizes convenient to pass in trade from hand to hand. It is not so with a ham or a side of bacon. Their forms, sizes and weights are determined by natural processes, such as the size, weight and condition of the animal slaughtered, which are not within the control of the packer. They are not collected or put together, nor have they ever been known to be sold as of a given size, quality or weight. For these reasons, it seems clear that the trial court was right in holding that the ambiguous term "package" was not intended to apply to a ham or a side of bacon, concerning which no custom has ever existed that it shall pass in trade as of a given weight or quantity.

It is well settled as a proposition of law that, where the words of a statute are of doubtful meaning, the purpose of the legislation may be considered as an aid to their interpretation; and we come now to consider that

question. It seems apparent that it was the intention of the legislature in passing the act in question to prohibit the various kinds of fraud and deceit which have too often been practiced in recent years in the manufacture and sale of food products. Indeed, the prosecuting attorney contends that such was the purpose of the legislature. It therefore seems clear that acts which have no tendency to cheat or defraud the purchaser or consumer of such products are not within the letter or spirit of the statute, and the recent amendment of the act clearly indicates that such was the opinion of the lawmakers.

As above stated, the processes employed by Swift & Company in preserving hams and bacon are resorted to for the sole purpose of enhancing their value as food products, and that by wrapping them in the manner detailed by the evidence no fraud or deceit is practiced upon the purchaser or consumer. He has his choice of purchasing wrapped or unwrapped meats. When he purchases the whole of a wrapped ham or side of bacon, it is weighed to him over the counter, and the price he pays is determined by its gross weight. He knows that he is not only paying for the ham or side of bacon, whichever it may be, but is also paying for the wrappings in which it is contained. Again, he may, if he so desires, purchase a less quantity of the same meat, and in such case the wrapping will be removed by the retailer, and the meat will be cut, weighed and sold to him in that manner. Finally, it appears that the parcels in question were properly branded as to contents, and hence no fraud or deception has been perpetrated by the acts complained of. Indeed, none could be practiced upon the consumer or purchaser by such a transaction.

We are therefore of opinion that the acts committed by the defendants were not violative of either the letter or spirit of the statute on which the prosecution was based. For the foregoing reasons, the state's exceptions are overruled, and the judgment of the district court is

AFFIRMED.

ROSE, J., took no part in this decision.

DEAN, J., dissents.