## STATE v. ARMOUR & COMPANY.[1]

June 7, 1912.

Nos. 17,560—(11).

**Construction of act.**

Laws 1911, c. 156, § 6, creating a department of weights and measures, fixing standard weights and measures, and providing, among other things, that it shall be a misdemeanor for anyone to "sell or offer or expose for sale less than the quantity he represents," covers any case where an actual misrepresentation of the quantity sold, or offered or exposed for sale, is made, whether such misrepresentation is accomplished by the direct and immediate use of false weights or measures or not.

**Same.**

Under this statute, selling, offering for sale, and exposing for sale less quantity than represented are mala prohibita, of which neither specific intent, fraud, nor deception is an element.

**Weight of wrappings.**

The thing penalized by the statute is a misrepresentation of quantity; and hence, where it is tacitly agreed between the seller and the buyer, whether by express agreement or through mutual, though unexpressed, understanding, that an offer of sale, an order, or an invoice includes in the weight indicated the weight of the wrappings of the commodity sold, and such commodity so sold, offered for sale, or invoiced, together with its wrappings, conforms in weight to the terms of the sale, offer, or invoice, the penalty of the statute does not attach.

[1] Reported in 136 N. W. 565.

•[Note]· Validity of sale by false weights and measures, see note in 12 L.R.A. (N.S.) 599.

**Evidence required to convict.**

To make out a prima facie case under such statute it is sufficient for the state to prove a sale, or an offer or exposure for sale, of a designated amount of a commodity, in terms ordinarily and grammatically meaning so much of such commodity exclusive of the weight of the wrappings or container, and that a less quantity net was delivered, or offered or exposed for sale; but the seller must be allowed to prove, if he can, that there was not in fact any misrepresentation.

**Sale in packages not necessarily forbidden.**

The statute does not absolutely forbid the ordinary sale of merchandise in wrappings or packages, according to which the wrapping or container is practically sold at the same price per pound as the commodity which it encloses, provided such a transaction does not involve an actual misrepresentation as to the quantity sold.

**Act constitutional.**

As thus construed, the statute is not unconstitutional, as an unwarranted interference with the freedom of contract.

**Same.**

The statute is not unconstitutional, as in violation of Const. art. 4, § 27, providing that "no law shall embrace more than one subject, which shall be expressed in its title."

Defendant was charged in the municipal court of St. Paul with the offense of offering and exposing for sale a quantity of pork of less weight than represented. The complaint was tried on stipulated facts by Finehout, J., who found defendant guilty as charged. From the judgment and sentence, defendant appealed. Reversed and new trial granted.

*Frank B. Kellogg, C. A. Severance, Robert E. Olds* and *A. B. Stratton,* for appellant.

*Lyndon A. Smith,* Attorney General, *Alexander L. Janes,* Assistant Attorney General, and *John A. Burns,* Assistant Corporation Attorney of St. Paul, for the State.

PHILIP E. BROWN, J.

This is an appeal by the defendant from a conviction, had in the municipal court of St. Paul, upon the complaint of one Anthony Friedmann, on a charge that the defendant "did wrongfully, unlaw-

118 M.—9.

fully, and wilfully and knowingly offer and expose for sale" to the said Friedmann certain "Boston butts" and "pork loins," representing them to be of a certain weight, whereas in fact their true weight was less. The cause was submitted to the trial court on stipulated facts.

It is conceded that the intention of the state was to charge an offense under Laws 1911, p. 197, c. 156, entitled: "An act creating a department of weights and measures, to be under the jurisdiction of the Railroad and Warehouse Commission, defining its duties and powers and providing penalties for interference therewith."

The act, after creating the department as defined in the title, providing for a commission of weights and measures, with deputies, etc., conferring power upon the commission to prescribe necessary rules and regulations, requiring the department to keep the standard weights and measures and the seal for sealing copies thereof, and conferring and imposing certain specific powers and duties upon the department, provides as follows, in section 6:

"Any person who shall offer or expose for sale, sell, or use, or have in his possession a false scale, weight or measure, or weighing or measuring device, or any weight or measure or weighing or measuring device which has not been sealed within one year, as provided by this law, or use the same in buying or selling of any commodity or thing; or who shall dispose of any condemned weight, measure or weighing or measuring device, or remove any tag placed thereon by any authorized employee of the department, or shall sell or offer or expose for sale less than the quantity he represents; or sell or offer or expose for sale any such commodities in the manner contrary to law; or shall sell or offer for sale or have in his possession for the purpose of selling, any device or instrument to be used to, or calculated to, falsify any weight or measure, or shall refuse to pay any fee charged for testing and sealing or condemning any scale, weight or measure, or weighing or measuring device, shall be guilty of a misdemeanor," etc.

Invoking the doctrine of noscitur a sociis, the defendant's first contention is that this statute is not involved in the transaction

charged in the warrant in this case. "The words shall 'sell or offer or expose for sale less than the quantity he represents' cannot," says the defendant, "reasonably be torn from their setting, and their scope and meaning enlarged." Hence, argues the defendant, this provision contemplates only misrepresentation of quantity by false weights or measures, and, as no such misrepresentation is charged, the said statute is inapplicable. Such being the case, continues the argument, the offense attempted to be charged must be referred to R. L. 1905, c. 101, § 5115, and, being so referred, must fail for lack of any allegation or proof of fraud on the part of the defendant. In other words, the defendant contends that the act of 1911 was not intended to supersede R. L. 1905, § 5115, and that, except as to misrepresentations with weights and measures, the act last cited is still in force, and hence that, with the exception aforesaid, fraud is an element of the offense.

Aside from the question of the repeal of said section 5115, that this contention cannot be sustained seems to us clear from a mere reading of the two statutes.

The said section 5115 provides: "Every person who shall injure or defraud another by using, with knowledge that the same is false, a false weight, measure or other apparatus for determining the quantity of any commodity or article of merchandise, or by knowingly delivering less than the quantity he represents; or who shall retain in his possession any weight or measure, knowing it to be false, unless it appears beyond a reasonable doubt that it was so retained without intent to use it, or permit it to be used, in violation of the foregoing provisions of this section; or who shall knowingly mark or stamp false or short weights or false tare on any cask or package, or knowingly sell or offer for sale any cask or package so marked shall be guilty of a misdemeanor."

It is at once apparent, on reading this section, that fraud is of its essence. On the other hand, it is equally as apparent from the reading of the act of 1911, that the things there penalized are mala prohibita, pure and simple, of which, in the contemplation of the law, intent to defraud or commit wrong is not an element. It is in this

difference between the two acts that, in our opinion, the purpose of the legislature in incorporating in the act of 1911 the provision in question is to be found. In other words, the legislature wished to dispense with the difficult, and often insuperable, task of proving intentional wrongdoing on the part of the seller.

So far as the application of the doctrine of noscitur a sociis is concerned, it seems to us that the defendant's argument would emasculate section 5115 to the same extent that it would the act of 1911, for the "setting" of the inhibition against selling less than represented is practically the same in both statutes. The broadening of the inhibited acts by the act of 1911 is likewise very striking, for the offense is no longer confined to "delivering" less than represented, or to false markings of packages, but is extended to "offering or exposing for sale" of less than represented. If the act were given the construction contended for by the defendant, a large field for fraudulent operations in connection with trade in commodities and merchandise would be left open. It is difficult to grasp the intent of the words "offer or expose for sale," as used in the statute, if it contemplates only immediate and direct use of false weights or measures in connection with the acts penalized. Moreover, as all quantities must be determined with reference to some standard of comparison, and the common and ordinary standard is some weight or measure, we do not see how it can successfully be contended that any violence is done either to the title or the other provisions of the act of 1911, by extending the inhibition against selling, offering, or exposing for sale less than represented to all and any cases where there has been actual misrepresentation of the quantity sold, offered for sale, or exposed for sale.

We hold that the act of 1911 is broad enough to cover any case where a sale, offer to sell, or exposure for sale of less than actually represented is charged. In reaching this conclusion we have not been unmindful of the rule that the title of an act may be considered in aid of its construction. 3 Dunnell, Minn. Dig. § 8964. Nor do we deem it necessary to invoke the correlative rule that the title, though proper to be considered, is not always of decisive significance. Id.

§ 8914. Giving the "setting" of the inhibition here involved its fullest signification we still are of the opinion above announced.

The conclusion here reached does not, of course, involve the constitutionality of the statute as dependent upon its title. The defendant makes a point on this, but as such point is largely dependent, in its determination, upon the further construction of the statute, we will postpone our consideration of the same until we have determined the purpose of and effect of the statute in its practical application.

2. The next question to be determined relates to the operation of the statute in its practical application to the cases covered thereby, and, more specifically, whether the construction which we have given it requires an affirmance of the conviction in this case. It does not follow, as would seem to be the state's contention, that because the statute covers this case as one of a class, and because it does not contemplate proof of fraud, the defendant in this case is necessarily guilty of the offense charged. The defendant's guilt here, under the stipulated facts, is a matter of evidence; and before entering upon the matter of the further construction of the statute, we will state the substance of the facts so stipulated. They are as follows:

The complainant, Anthony Friedmann, has been engaged continuously for many years as a retail meat dealer in the city of St. Paul. The defendant is a corporation, and has been, for a considerable time, engaged in the business of packing and wholesaling meats, with local branch houses for distributing its products to the retail and jobbing trade, at several places in the state, including St. Paul; but it has at no time sold meat at retail. On September 4, 1911, the said Friedmann ordered by telephone, from the defendant's branch house in said city, one hundred pounds of pork loins and two hundred pounds of Boston butts. The price per pound of such meats was agreed upon in the telephone conversation, and the said product was then and there offered for sale to the complainant, the same to be delivered at his place of business. Thereafter, and on the same day, the defendant delivered to the said Friedmann two boxes of Boston (pork) butts and two of pork loins. All of the said boxes had stenciled on their ends words and figures purporting to indicate the gross weight,

the tare, and the number of pieces. Such words and figures were understood at the time, by both the seller and the buyer, to mean, and they did in fact mean, that the gross weight of the boxes and their contents was as indicated thereon, and that the tare referred to indicated the weight of the boxes alone. The covers of the boxes were securely nailed down in the manner in which they left the defendant's packing plant, and the method of offering for sale of the said meats was in accordance with the defendant's usual custom. Friedmann had been, for a long time, one of the defendant's customers, and had frequently purchased from it like pork, which had been offered for sale substantially in the same manner as in the instant case. At the time of the delivery of the aforesaid meats to the complainant, the defendant delivered a written invoice, covering the said merchandise, indicating the kinds of meat sold, its weight, price per pound, and the total amount of the bill or invoice. The weight stated in the invoice was one hundred eight pounds of loins, and two hundred eight pounds of butts. The complainant, immediately after their delivery opened the boxes, and weighed their contents. The butts and loins were wrapped, piece by piece, in oiled or parchment paper, and the weight at which they were billed to the complainant was found to include the weight of the paper, and were packing plant weights. After removing the said paper wrappings, the pork butts weighed two hundred three pounds, and the loins one hundred four pounds, thus indicating that the wrappings of the butts weighed five pounds and that of the loins four pounds. The said pork was packed at the defendant's plant in Sioux City, Iowa. In preparing such meats for the market, the defendant's uniform custom is, at its plants, to wrap the same in oiled or parchment paper on the cutting floor, immediately upon the cutting of the same from the carcasses, in order to insure cleanliness, to preserve the appearance of the product, and to prevent shrinkage by evaporation. The product is then taken to the packing room; the weight of the box is ascertained, the box is packed and weighed again, and the gross weight and the weight of the box are stenciled on the end of the box; the gross weight representing the weight of the meat, including the paper wrapping, together with that of the box, and the tare representing the weight of

the box alone. The gross weight and the tare stenciled on the ends of the boxes delivered to the complainant were correct gross weight and tare under the foregoing system at the time the product was weighed and shipped from the Sioux City plant, a few days prior to delivery to the complainant. For many years it has been the defendant's universal custom to sell meats of the kind here involved at points distant from its packing plants, including St. Paul, upon weights taken at the plant at the time of shipment; the net weight upon which sales are based being the difference between the stenciled gross weight and the tare, and the said net weight including the weight of the paper wrappings and such shrinkage as may occur between the time of packing and of delivery to the retailer. This custom has been known to the complainant for many years, and he has, during the said period, purchased from the defendant, and from packers and meat dealers in St. Paul, like meats wrapped and billed in accordance with the said custom, and he ordered the meats here involved, and the same were delivered, with full knowledge, on his and the defendant's part, of the said custom and pursuant thereto.

It is the custom of some packing companies to deliver to their local trade in the city in which their plants are located and in adjacent territory, not exceeding a radius of fifty miles, meats of the kind here involved unwrapped and unboxed; but for many years the wrapping and boxing of such meats has been regarded as necessary in shipping them to points distant more than fifty miles, because of their perishability. The complainant has at times purchased like meats unwrapped from local packing houses in St. Paul. The defendant, however, maintains no packing plant therein, or nearer than Sioux City, Iowa. Meats of the kind here involved are not customarily sold by the retailer to the consumer in the form in which they are purchased from the wholesaler, but the boxes are opened, the meats unwrapped, and the portion desired by the customer is cut therefrom. Such meats are customarily packed in fifty, one hundred, and two hundred pound boxes; but, owing to the method of packing above described, it is impracticable to arrive at the weights above mentioned, except approximately, and it was the understanding, both of the complainant and the defendant, that the boxes delivered would

contain the weights ordered only approximately. It was impossible for the defendant to estimate accurately the weight of the paper wrappings, because the different sheets thereof taken from the same bale vary in weight, and the amount of the fat and moisture absorbed thereby in a given time varies with different pieces of meat and with different papers. The cost to the packer of the material and labor in the process of wrapping is not substantially less than the additional amount received by reason of the inclusion of the weight of the paper wrappers in the weight of the meat billed to the customer. More than seventy-five per cent of pork loins and butts sold in the St. Paul market are wrapped, sold, and billed in the manner hereinbefore stated.

Upon the above-stated facts the state contends, and the trial court held, that the defendant was guilty as charged, the theory being that since the net weight of the meats, without the paper wrappings, was less than the difference between the gross weight and the tare stenciled on the boxes, and less than the weights indicated by the invoice, there was a sale or an offer of sale of less than represented. But, however reasonable this argument may seem at first glance, a closer scrutiny of the statute discloses its fallacy, and likewise incidentally disposes of the defendant's contention that the statute is unconstitutional, as being an unwarranted interference with the right to contract, to which latter contention we will refer later. We do not hold that the legislature had not, as contended by the defendant, the power to penalize a transaction like the one here involved, for that question is not now before us. The question here is, Does the act of 1911 prohibit or penalize the transaction detailed in this case? The act provides: "Any person who shall * * * sell or offer or expose for sale less than the quantity he represents * * * shall be guilty of a misdemeanor."

It does not prohibit two persons, or any number of persons, from coming to an understanding as between themselves that, when one of them says "pound of pork," the other or others shall understand such expression to mean a certain portion of hog meat wrapped in paper, which, together with its wrappings, weighs a pound. The key

to the statute is the word "represents." If it be tacitly agreed between the seller and the buyer, whether by express agreement, or through mutual, though unexpressed, understanding, that an order or an invoice for a certain number of pounds of a commodity, such as pork, refers to the number of pounds thereof, weight of wrappings included, and the thing sold or offered for sale, together with such wrappings, conforms in weight to the terms of the offer or invoice, how can it be said that less has been sold or offered for sale than represented? Less of what? That depends upon the understanding of the parties. In regard to the sale of intoxicating liquors to minors, the tests of illegality are absolute, viz., the intoxicating character of the liquor sold and the nonage of the buyer. Neither of these tests depends upon any question of understanding or knowledge. But here the test is: "What has the seller represented?" Or, in other words, has he, upon the whole transaction, made a misrepresentation?

It would not do to indulge this construction of the statute to the extent of requiring the state to disprove a mutual understanding between the seller and the buyer that the weight indicated upon an offer of sale, or called for upon a purchase includes the weight of the wrapping or container. To make out a prima facie case it is sufficient for the state to prove a sale or offer or exposure for sale of a designated amount of a commodity in terms ordinarily and grammatically meaning so much of such commodity exclusive of wrapping or container, and that a less quantity net was delivered or offered or exposed for sale. But, nevertheless, we think the seller must be allowed to prove, if he can, that, as between himself and the buyer, the representation made was in fact true. If by commercial usage "Boston butts" and "pork loins" mean certain portions of hog meat, wrapped and ready for delivery, and the sale or offer of sale is made with reference to the meaning of these terms as thus defined, how can it be said that there has been a misrepresentation? Such evidence, however, is admissible solely upon the issue of misrepresentation, and not upon any question of intent to defraud. If there has been a sale, or offer or exposure for sale, of less than actually represented, the penalty of the statute attaches, regardless of the seller's

knowledge of the short measure or weight, and of his intent in making the misrepresentation, and regardless of whether any one has been deceived thereby; but certainly it cannot be truthfully said that there is a misrepresentation, where it appears that the thing referred to conforms, in kind, quantity, and condition, to the thing usually and commonly understood by the parties to be referred to when the terms in question are used.

Construing the statute as above indicated, it is necessary merely to advert to the stipulated facts already set out, in order to arrive at the conclusion that the defendant cannot be held to be guilty of the offense charged.

Neither can the statute, under the rule governing the construction of penal enactments, be considered as intending absolutely to forbid the ordinary sale of merchandise in wrappings or packages, where there is no actual misrepresentation, by words or acts, as to the quantity or weight of the contents. If the intent of the act were to prevent the long-established practice of including with the merchandise sold the weight of the ordinary package inclosing it or the paper wrapping thereof, the legislature would undoubtedly have so provided in express terms, and not have left such a radical change in usual and long-established business methods to conjectural inference or doubtful construction. If we should adopt the state's full contention, it would follow that innumerable unintentional violations of this law have occurred in the cities and villages of the state. No such construction should be adopted, unless it is inevitable. The penal laws of the state should be at least clear enough to be readily understandable by those who will be affected thereby, especially where acts are penalized without regard to specific intent. In the absence, therefore, of express and unequivocal legislative enactment to such effect, it will not be presumed that the legislature intended to make a large portion of citizens of the state constructive lawbreakers.

3. The defendant's third contention is that the state's position amounts to a denial of the right of the seller of merchandise to furnish paper wrappers and charge therefor by the pound, and that such an interpretation of the statute renders it unconstitutional.

This contention, we think, is disposed of by the interpretation which we have placed upon the statute as above indicated, when we hold that it does not deny the right to sell wrapped goods and to charge for the wrapper at the same rate per pound charged for the goods, but merely penalizes such a transaction when it amounts to a misrepresentation of the amount sold or offered for sale. That the latter is a valid exercise of the police power of the state cannot be doubted.

4. Likewise, we think that our interpretation of the statute disposes of the defendant's contention that the statute in question violates section 27 of article 4 of the state Constitution, providing: "No law shall embrace more than one subject, which shall be expressed in its title." It is sufficient if the title of a statute be fairly suggestive of its subject, and every fair doubt should be resolved in favor of the sufficiency of the title. State v. Bridgeman & Russell Co. 117 Minn. 186, 134 N. W. 496; 3 Dunnell, Minn. Dig. § 8907. Under this rule, we hold that the title of the act of 1911 is sufficient to cover the provision herein involved as we have construed it.

Judgment reversed, and new trial granted.