[No. 13391. Department Two. January 4, 1917.]

THE CITY OF SEATTLE, *Appellant*, v. JOHN L. YOCUM, *Respondent.*[1]

WEIGHTS AND MEASURES—REGULATION — ORDINANCES — VIOLATION. A special contract for the sale of a commodity in bulk by gross weight, where the purchaser is not overreached or deceived, is not in violation of an ordinance which prohibits the sale of any commodity usually sold in bulk or quantity by weight or measure unless wrapped or measured on officially tested scales and unless the portion sold by weight or measure shall be the true net weight or measure which shall be plainly marked on the packages; since the purpose and intent of the ordinance is merely to protect the public from being defrauded by false weights and measures.

Appeal from a judgment of the superior court for King county, Ronald, J., entered January 17, 1914, upon an agreed statement of facts, dismissing a prosecution for the violation of a city ordinance upon appeal from a conviction in justice court. Affirmed.

*Ralph S. Pierce* and *James E. Bradford,* for appellant.

*Palmer & Askren,* for respondent.

[1]Reported in 162 Pac. 56.

HOLCOMB, J.—Respondent was prosecuted in the police court of Seattle for an alleged violation of an ordinance of Seattle regulating the inspection and sale of commodities in that city by weights and measures. He was convicted in that court and appealed to the superior court. The case was then tried on an agreed statement of facts, and respondent discharged. From such judgment, the city appeals.

The following are the agreed facts: The defendant, John L. Yocum, is the local manager of Swift & Company, wholesale dealers in meats in the city of Seattle, King county, Washington. Newman & Company are retail dealers in groceries and meats at 320 East Pike street, Seattle, and purchased for the purpose of reselling and not for personal consumption. On the 2d day of May, 1913, a city salesman of Swift & Company sold to Newman & Company twelve wrapped Premium smoked hams and twelve pieces of wrapped smoked Premium bacon.

Section 6 of ordinance No. 28,720 reads as follows:

"Sec. 6.  That it shall be unlawful for any vendor, or his servant, agent or other employee, in the city of Seattle, to offer to sell, or sell, or sell and deliver, any commodity ordinarily and usually sold in bulk or quantity by weight or measure, unless the same be wrapped or measured as the case may be upon or by officially tested and approved weights, measures, scales, scalebeams, patent balances, steelyards, automatic or computing scales or other instruments for weighing or measuring, and unless that portion of such commodity so offered for sale or sold by weight or measure shall be true net weight or measure."

Section 23 of ordinance No. 28,720 reads as follows:

"Sec. 23.  Any person guilty of violating any of the provisions of this ordinance shall, upon conviction thereof, be fined in any sum not less than five (5) dollars nor more than one hundred (100) dollars, or be committed to the city jail for a period of thirty (30) days, or may be both so fined and imprisoned."

Ordinance No. 28,720 was regularly passed by the city council of the city of Seattle on the 8th day of January, 1912,

and approved on the 10th day of January, 1912, and filed with the comptroller and *ex officio* city clerk on the 10th day of January, 1912, and was published January 13, 1912, and was and is of force and effect at all times since the last mentioned date. The gross weight of the twelve wrapped Premium hams was 149¾ pounds; the net weight of the twelve wrapped hams was 147½ pounds, and they were billed by Swift & Company to Newman & Company, the purchaser, at 149 pounds. The gross weight of the twelve pieces of wrapped Premium bacon was 82 pounds; the net weight of the twelve pieces of wrapped Premium bacon was 79¾ pounds, and they were billed by Swift & Company at 82 pounds. The hams and pieces of bacon were weighed upon the scales officially tested and approved by the department of public utilities of the city of Seattle. The twelve wrapped Premium hams and the twelve pieces of wrapped Premium bacon were ordered by Newman & Company, which well knew, at and before the time of purchasing the same, that it could only purchase Premium hams and Premium bacon wrapped. Prior to April 1, 1913, Newman & Company had received Premium hams and bacon unwrapped and since that date protested against purchasing Premium hams and bacon wrapped. There was no fraud or deception practiced by Swift & Company in the sale of the hams and bacon; it was the usual wholesale transaction; Newman & Company knew that it could purchase other brands of hams and bacon from Swift & Company at that time unwrapped. Premium hams and Premium bacon are especially selected from corn-fed hogs raised in the Mississippi Valley, slaughtered under the closest Federal inspection; in fact, each ham and each piece of bacon is inspected four times before it is sold to the trade; first, when it is slaughtered; second, while in the process of curing; third, when it is shipped from the packing house; and fourth, when it is smoked; they are mildly cured, and are wrapped in a special parchment paper to insure cleanliness, to preserve appearance, and to prevent shrinkage by evapo-

ration.  Premium hams and bacon have been so wrapped and extensively advertised at a large expense annually for more than thirty years, to such extent that the trade generally knows the contents of a package so wrapped.  Premium hams and bacon so wrapped are demanded by a very large percentage of the family trade.  Premium hams and bacon are always ordered as so many hams and so many pieces of bacon, and the whole number are weighed, billed, and paid for, at an agreed price per pound.  Accompanying this sale and all other sales, at the time of delivery, is an invoice which has printed on the back thereof the following:

SPECIAL NOTICE.

All shipments made at buyer's risk of damage in transit.

All lard in tins sold by the case, not by the weight.

Package meats, poultry and butter, including wrappers, are weighed when packed and constitute the subject of this sale; also back-sets and skewers are included in weight and constitute the subject of this sale.

No allowance made on goods sold on weight at time of packing for evaporation or moisture due to natural causes.

UNCANVASSED MEATS

OR MEATS THAT ARE SEWED IN MUSLIN BUT NOT WHITE-WASHED ARE NOT guaranteed against skippers.  Canvassed white-washed meats are guaranteed sound and free from skippers for thirty days from date of shipment.

FRESH MEATS AND SAUSAGES

are always shipped at buyer's risk of spoilage.

CLAIMS

No claims will be considered unless immediate notice is given us as soon as goods are received.

. Such an invoice was delivered to and received by the purchaser, Newman & Company, before it had paid for the goods.

Premium hams and bacon are sold wrapped and the wrapper is included in the weight.  The quantity of parchment paper, labels and twine used in wrapping a ham or piece of bacon, and the cost of labor, very nearly approximate the price charged per pound for the product.  The weight of hams and pieces of bacon varies, owing to the size of the

animal at the time of slaughter. Hams vary in weight from six to forty pounds, and pieces of bacon vary from four to forty-five pounds. The weight of the sheets of paper used in wrapping Premium hams and bacon varies; different sheets of paper from the same bale vary in weight, and various sheets absorb more of the grease and moisture from the hams and bacon contained therein than do others, and it is impossible to determine the weight of a wrapped ham or piece of bacon at the time of sale without unwrapping. Two Premium hams were taken from the same car load and both were weighed immediately after taking them out of the smokehouse; number one weighed 10 pounds and 10 ounces, and was hung up unwrapped; ham number two weighed 10 pounds and 6¼ ounces, and was wrapped up in the customary Premium ham wrapper and hung at the side of ham number one. These hams were hung up June 7, 1913, and were again weighed on the 11th day of June, 1913. Ham number one lost two ounces; ham number two lost one-fourth of an ounce.

The trial court held that the respondent was not guilty, because the facts showed a special contract of sale between the seller of the commodities and the buyer and the ordinance did not prohibit such sale by special contract. The reasoning of the trial judge was fully set forth in a written opinion, and is as follows:

"The power to make a special contract between vendor and vendee will not be denied by the courts unless plainly prohibited. This is a penal ordinance, and unless the limitation of the right to make special contract sales is therein expressed or plainly and reasonably implied, the right must be upheld. The clear intent of the ordinance, as shown by its title and subject-matter, is to prevent the public from being defrauded by false weights and measures. It is declared unlawful for any vendor to sell any commodity ordinarily and usually sold in bulk or quantity by weight or measure unless two conditions are observed—first, it must be weighed on approved scales; second, that portion 'so sold by weight or measure' shall be true net weight.

"To analyze, for the purpose of· construing, the section in question: Is the phrase 'by weight or measure' in the first clause, an adjective phrase modifying the nouns 'bulk' and 'quantity,' and thereby intended to mean that every such bulk or quantity shall be sold by net weight, or is it an adverbial phrase modifying the verb 'sell' and intended to mean that only such commodities as *are* sold by weight or measure shall be sold by true net weight?

"The second condition in the last clause refers to the commodity 'so . . . sold by weight or measure.' Why limit or modify the word commodity here by the phrase 'so . . . sold by weight' if the intention was that all commodities sold in bulk should be so sold? The city bases its contention mainly upon the decision of the supreme court of this state in the *City of Seattle v. Goldsmith,* 73 Wash. 54 [131 Pac. 456]. A careful examination easily distinguishes that case from the one at bar. The act there charged as a violation was different from the act here charged, and the prosecution was under a different ordinance. The ordinance in question there made it unlawful to sell in original packages, boxes, sacks, etc., any commodity ordinarily or usually sold in bulk or otherwise, by weight or measure, unless the true net weight be stamped on the face of the package, etc. The defendant sold California salt and California raisins in original sack or package by the pound without having the net weight stamped upon them. The defendant claimed that the provision requiring net weight of commodity to be stamped upon the container was unreasonable because it was impossible to estimate the loss by evaporation; that salt and raisins so packed will lose weight by evaporation, and that the true weight, if stated on the container at the time of packing, would not be the true weight at the time of sale, and hence the dealer would be liable for violation of the Federal act. Our supreme court held that as the packer or manufacturer was in the best position to ascertain loss by evaporation, it was not unreasonable to require him to overcome the loss approximately by increasing the size of the package. The question there was, failure to stamp net weight on container. The question here is the right of vendor and vendee to make a special contract for sale of a commodity by gross weight. If the question there had involved the right of Goldsmith and his customer to make a contract for the sale of a sack of

salt or a carton of raisins, by gross weight, then the question there would have been the same as the question here. An ordinance of New York City provided that 'All . . . meats . . . sold in . . . New York shall be weighed by scales duly tested, etc.' There would seem to be no ambiguity in this language. It would appear to require that *all* meat shall be sold by weight; yet it was construed as not prohibiting the right of special contract of sale by other methods in the case of *City of New York v. Fredericks*, 34 N. Y. Supp. 796, where the facts showed that defendant, a retailer of provisions, being asked for a pound jar of bacon, refused to sell by weight but sold by the jar and was prosecuted. The supreme court held that there was in the ordinance 'no express prohibition against a sale in jars of food not purporting to have been weighed, but which are sold as put up by the manufacturer,' and that 'a construction should not be given to such an ordinance by implication which would prevent the public from purchasing provisions or food protected from infection or contamination in jars or cans.' This decision was reviewed by the New York Court of Appeals which, taking judicial notice of the long practice of dealers in selling foods in cans and jars and not by weight, said:

" 'In no event can the court resort to implication to read into a penal ordinance a prohibition which is not expressed therein. In the clause of the ordinance under consideration there is no express provision forbidding the sale of meat by the jar as the defendant sold his bacon. Such a provision cannot be inserted by implication into an ordinance of this character;' and consequently they construed the ordinance to mean, 'merely a requirement that where the . . . commodities *are* sold by weight the balances used must be such as have been approved.'

"The same ordinance was later involved in *City of New York v. Wilkinson Bros. & Co.* [151 App. Div. 660], 136 N. Y. Supp. 219, except that the commodity in this case was twine instead of food. The defendants were jobbers in twines and sold one bale at twelve and a half cents per pound gross weight, which was 144 pounds, or seven pounds more than true net weight, the extra seven pounds being the weight of the covering of the bale and of the coverings of the several packages contained in a bale. The manufacturers customarily pack the twine in bales, each bale con-

taining a number of wrapped packages, and each package containing a number of balls. The net weight of the bales cannot be ascertained without completely unpacking the bales and unwrapping all the packages. The purchaser of the bale of twine knew of the custom and usage of the trade and purchased with such knowledge. The defendants were prosecuted for selling a commodity at more than its true net weight. The court held that notwithstanding the ordinance, it was competent for the vendor and vendee, without fraud or deception on the part of either, to make a contract of sale of a commodity in bulk or by gross weight.

"The case of *City of New York v. Sulzberger & Sons* [80 Misc. Rep. 660], 141 N. Y. Supp. 876, is more nearly in point. The ordinance previously referred to as amended provided that 'No person shall sell . . . any commodity . . . in the city of New York at or for a greater weight than the true weight thereof; and all . . . meats . . . sold in the city shall be weighed by scales duly tested, etc.' Defendants, packers and wholesalers, sold to a retailer '1 box of pork loins' containing 4 pork loins each separately wrapped. It was the usual and ordinary custom for the packer to wrap pork loins piece by piece in an oil or parchment paper in order to insure cleanliness, preserve appearance, and prevent shrinkage by evaporation, and to pack them in boxes and sell them in these original packages. This was a wholesale transaction and in the ordinary course of business, as previously conducted, between seller and purchaser. The meat in question weighed 61 pounds, the wrappers weighed 1 pound, but the meat was billed at 62 pounds net, and 69 pounds gross, including the box. The bill contained a statement 'wrapped meats sold gross weight.' The court held the transaction to be a sale by a wholesaler to a retailer of packed goods by the package at gross weight including wrappers, saying 'Thus both parties have, without fraud or deception on the part of either, made a contract of sale of a box of pork tenderloins by gross weight. That they have a right to do so cannot be questioned.'

"A like doctrine is laid down by the supreme court of Minnesota in *State v. Armour & Co.* [118 Minn. 128], 136 N. W. 565. The statute provided that 'Any person . . . who shall sell . . . less than the quantity he represents . . . shall be guilty,' etc. The purchaser, a retailer,

ordered by 'phone at an agreed price from the.defendant, a packer and wholesaler of meats, '100 lbs. of pork loins and 200 lbs. of Boston Butts.' The retailer understood from their previous course of dealing the customary and usual way of wrapping such meats and packing the same in 50, 100 and 200 lb. boxes for sale in that manner to the trade, and that the billing of such meats always included the weight of the wrappers in the net weight of the meat. The defendant delivered '2 boxes of Boston Butts and 2 boxes of pork loins,' on which was stenciled the gross weight including boxes, and net weight including wrappers. The wrappers on the Butts weighed five pounds and on the loins four pounds. The defendant was charged with selling five pounds less of Butts and four pounds less of loins than he represented. The court said the 'key' to the statute was the word 'represented.' 'It does not prohibit two persons from coming to an understanding as between themselves that when one of them says 'pound of pork' the other shall understand such expression to mean a certain portion of hog meat wrapped in paper, which, together with its wrappings, weighs a pound. . . . If it be tacitly agreed between the seller and the buyer, whether by express agreement, or through mutual, though unexpressed, understanding, that an order or invoice for a certain number of pounds of a commodity, such as pork, refers to the number of pounds thereof, weight of wrapping included, and the thing sold . . . together with such wrappings, conforms in weight to the terms of the offer or invoice, how can it be said that less has been sold than represented. Less of what? That depends upon the understanding of the parties. . . . The test is, 'what has the seller represented? Or, in other words, has he upon the whole transaction made a misrepresentation?' . . . If by commercial usage 'Boston butts' and 'Pork loins' mean certain portions of hog meat, wrapped and ready for delivery, and the sale is made with reference to the meaning of these terms as thus defined, how can it be said that there has been a misrepresentation? . . . Certainly it cannot be truthfully said that there is a misrepresentation, where it appears that the thing referred to conforms, in kind, quantity, and condition, to the thing usually and commonly understood by the parties to be referred to when the terms in question are used.'

"But the identical commodity involved in the case at bar was the subject of a prosecution against these same defendants under the statute of Nebraska in the case of *State v. Swift & Co.* [84 Neb. 244], 120 N. W. 1127. There, as here, defendants sold in the usual course of trade, to a customer understanding the custom and usage of the trade, 'a wrapped ham and a piece of wrapped bacon' at their gross weight including the wrappers. The court say: 'It was the intention of the legislature in passing the act to prohibit the various kinds of fraud and deceit practiced . . . in the sale of food products. . . . It therefore seems clear that acts which have no tendency to cheat or defraud the purchaser . . . are not within the letter or spirit of the statute . . . The processes employed by Swift & Co. in preserving hams and bacon are resorted to for the sole purpose of enhancing their value as food products, and that, by wrapping them . . . no fraud or deceit is practiced upon the purchaser. He has his choice of purchasing wrapped or unwrapped meats. When he purchases the whole of a wrapped ham or side of bacon, it is weighed to him and the price he pays is determined by its gross weight. He knows that he is not only paying for the ham or side of bacon . . . but is also paying for the wrapping in which it is contained.'

"The Tennessee case of *State v. Co-operative Store Co.* [123 Tenn. 399], 131 S. W. 867, cited by the city attorney, is not contrary to the views herein expressed. The statute declared the weight of a bushel of corn meal to be 48 pounds, and made it unlawful to sell any corn meal except in bags or packages containing, by standard weight, two bushels, or one bushel, or one-half bushel, or one-fourth bushel, or one-eighth bushel, respectively, and required that each bag or package should have plainly marked thereon the weight. Defendant put up and sold corn meal in bags containing twenty-one pounds, less by three pounds than half a bushel. It was not sold by actual weight, nor was its actual weight marked on the package. The court say:

" 'The fraudulent practice sought to be suppressed is the sale of packages of corn meal, purporting, expressly or by implication, to contain certain weights and measures for which the purchaser is charged, when in fact they contain less quantities, whereby the public is deceived and defrauded

to the extent of the deficiency in weight or measure of the package purchased. . . . It is well known that corn meal is generally sold by the bushel, or the fraction of a bushel, and is put in packages purporting to contain such quantities, and the object of the statute is to prevent the giving of short weights in these packages, and the consumers from thus being deceived and defrauded.'

"After thus reciting the objects of the statute, the court squarely (in face of the wording making it unlawful to sell in any size packages except in certain aliquot parts of a bushel) uphold the right of vendor and vendee to agree upon a sale in any other or different size or manner, and say such statute 'properly construed does not prohibit . . . any person from selling meal in any bag, or other receptacle, or quantity, desired by the seller or consumer, when priced and delivered by actual weight or measure.'

"Neither does the case of *Freadrich v. State of Nebraska* [89 Neb. 343], 131 N. W. 618, cited by the city, announce any principle to the contrary. That prosecution was for selling misbranded food. Food was declared to be misbranded if sold in cans or pails without the net weight of contents being stamped on the container. A distinction was made in favor of one class of dealers. The defendant sold a pail of lard without having the net weight stamped on it. The question raised was the constitutionality of the classification, and the decision has no bearing upon the case at bar.

"In a recent case of *Spokane v. Arnold*, 73 Wash. 256, [131 Pac. 815], our own supreme court sustained the right, under a similar ordinance, to make special contract of sale. The provisions of the Spokane ordinance were substantially as follows:

"Sec. 22. 'A brick or cake of butter for commercial purposes' shall contain one pound of butter, net avoirdupois.

"Sec. 23. Whoever sells any goods sold by weight in any package, and fails to mark on the package the gross and net weight, shall be guilty, etc.

"Sec. 24 made it unlawful for any person, where goods are sold by weight or measure, to sell less than the quantity bargained for or named in the sale.

"Sec. 25 made it unlawful for any person to sell any article of food that shall be short in weight.

"Defendant sold '5 bricks or cakes of butter weighing less than 16 oz. avoirdupois net.' They were put up in cartons usually used to contain 1 pound of butter. There was stamped on each carton: 'Full weight 15 oz. net, 16 oz. gross.' The cakes and bricks were prepared in sealed packages ready for delivery in that manner. The supreme court took judicial notice that butter is usually sold in cakes or bricks by the pound, sometimes with and sometimes without cartons or containers, but without anything to indicate their weight, and held that the object of the ordinance was to prevent the practice of fraud upon consumers who naturally suppose that a carton of butter so sold would contain at least one pound, unless marked otherwise, and, there being no prohibition against the sale of butter in less than 1 lb. lots, so long as the carton showed the bricks or cakes to be less than 1 lb. net, there was no fraud, and say: 'The plain meaning of the ordinance is that, where butter is sold in cakes or bricks without any mark thereon, such cakes or bricks must contain 1 lb. net, avoirdupois. And where any quantity less than one pound is sold in cases or packages, the net and gross weight must be stated upon the containers.'

"Hence, the agreed facts in this case showing the long usage and custom of the trade with reference to this specially prepared brand of meat, the trade recognition and understanding that 'Wrapped Premium Bacon' means ham or bacon with wrappers, the purchasers' knowledge thereof from their previous course of dealing with defendant, and their distinct understanding at the time of ordering that they could obtain it only, and must pay for it, in wrapper by gross weight, and there being no fraud or deception or misunderstanding, but the transaction being open and in their usual course, whereby Newman & Co. purchased and defendant sold 'wrapped hams' and 'wrapped pieces of bacon' of the number ordered, and of the true weight, reckoned upon the basis agreed, I am compelled to hold that the transaction is not forbidden by the ordinance in question."

Appellant urges that the trial court did not correctly construe the ordinance, and that this case is indistinguishable from *Seattle v. Goldsmith*, 73 Wash. 54, 131 Pac. 456. We think the case at bar easily distinguishable from that case and that the trial court correctly so distinguished it.

It is also asserted that the trial court avoided the effect of the entire ordinance, it containing another section, No. 11, as follows:

"That from and after March 31, 1911, it shall be unlawful for any vendor in the city of Seattle, or his agent, clerk, or other employee, to sell, offer for sale, or have in his possession with the intent to sell in original packages, boxes, crates, bottles, cartons, cases, bags, sacks, or other receptacles, any commodity ordinarily or usually sold or offered for sale in bulk or otherwise, by weight or measure, unless the true net weight or measure of the commodity so contained shall be plainly and legibly stamped or printed on the face of each such package, box, crate, bottle, carton, case, bag, sack or other receptacle, and unless the commodity so sold or offered for sale is actually sold or offered for sale as of such true net weight or measure."   Seattle Ordinance, No. 28,720, § 11.

We see nothing in that section either expressly or impliedly prohibiting a vendor and vendee agreeing on the sale of any article in bulk by gross weight if the purchaser is in no way overreached and deceived.   Nor does section 11 of the ordinance render the ordinance any more comprehensive and prohibitory than the statutes of Nebraska involved in the case of *State v. Swift & Co.*, 84 Neb. 244, 120 N. W. 1127, and of Minnesota construed in *State v. Armour & Co.*, 118 Minn. 128, 136 N. W. 565, or the ordinance of New York City in *City of New York v. Sulzberger & Sons*, 80 Misc. Rep. 660, 141 N. Y. Supp. 876, cited and discussed by the trial judge.

The recent case of *Armour & Co. v. North Dakota*, 240 U. S. 510, merely upholds the constitutionality of a statute of North Dakota directing the manner of selling lard at retail, and does not involve any question of the right to sell at variance with such statute by special agreement respecting the weight of the commodity.

Nor do the cases cited involving rates of carriage of goods upon contracts for such rates in violation of statutes expressly forbidding such contracts, or impliedly so forbidding as con-

trary to public policy or the general welfare, apply to such a case as this.

If articles are exposed for sale and misbranded as to weight or measure, without special notice to a buyer of the true weight or measure and an agreement upon the sale thereof, so that purchasers would be deceived and defrauded in purchasing such articles, the ordinance in question would apply.

We concur with the reasoning of the trial judge and with that of the cases relied upon by him. The judgment is affirmed.

Morris, C. J., Mount, and Parker, JJ., concur.