## ARMOUR & COMPANY v. STATE OF NORTH DAKOTA.

### ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 258. Argued March 3, 6, 1916.—Decided April 3, 1916.

The statute of North Dakota requiring lard when not sold in bulk to be put up in pails or other containers holding a specified number of pounds net weight or even multiples thereof and labled as specified is not unconstitutional as denying equal protection of the law or as depriving the sellers of their property without due process of law; nor is it, as to packages sent into the State from other States and afterwards sold to consumers by retail, unconstitutional as an interference with, or burden on, interstate commerce.

The net weight lard statute of North Dakota is directed to the manner of selling lard at retail and is not repugnant to the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768, which is directed against adulteration and misbranding of articles of food transported in interstate commerce.

27 N. Dak. 177, affirmed.

THE facts, which involve the constitutionality under the commerce, due process and equal protection provisions of the Federal Constitution and the Fourteenth Amendment thereto of the full weight provisions of the statute of North Dakota, relative to the sale of lard in containers and their validity under the Food and Drugs Act, are stated in the opinion.

Mr. N. C. Young, with whom Mr. Alfred R. Urion, Mr. Abram S. Stratton and Mr. J. S. Watson were on the brief, for plaintiff in error.

Mr. Andrew Miller, with whom Mr. Henry J. Linde, Attorney General of the State of North Dakota, Mr. Francis J. Murphy, Mr. H. R. Bitzing, Mr. Alfred Zuger and Mr. B. F. Tillotson were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

A statute of the State requires (§ 1) that "every article of food or beverage as defined in the statutes of this State shall be sold by weight, measure or numerical count and as now generally recognized by trade custom, and shall be labeled in accordance with the provisions of the food and beverage laws of this State. . . .

"Section 2 (Weight of Lard). Every lot of lard compound or of lard substitute, unless sold in bulk, shall be put up in pails or other containers holding one (1), three (3), or five (5), pounds net weight, or some whole multiple of these numbers, and not any fractions thereof. If the container be found deficient in weight additional lard, compound, or substitute, shall be furnished to the purchaser to make up the legal weight. The face label shall show the true name and grade of the product, the true net weight together with the true name and address of the producer or jobber. If other than leaf lard is used then the label shall show the kind, as 'Back Lard,' or 'Intestinal Lard.' Every lard substitute or lard compound shall also show, in a manner to be prescribed by the food commissioner, the ingredients of which it is composed, and each and every article shall be in conformity with, and further labeled in accordance with the requirements under the food laws of this State."

Violations of the act are made misdemeanors with a minimum and a maximum fine increased for subsequent offenses.

In pursuance of the statute the state's attorney for the County of Cass filed an information against plaintiff in error for unlawfully offering for sale and selling to one E. F. Ladd a quantity of lard not in bulk which was put up by the company and sold and delivered to Ladd in a pail which held more than two pounds and less than three

pounds net weight of lard, to-wit, two pounds and six ounces, which pail or container did not have or display on the face label thereof the true net weight of the lard in even pounds or whole multiples thereof but expressed the weight of the lard in pounds and ounces.

A demurrer to the information was overruled and the Armour Company pleaded not guilty. A stipulation was entered into waiving a jury trial and that the issues be tried by the court.

The company was found guilty and adjudged to pay a fine of $100. The judgment was affirmed by the Supreme Court of the State and this writ of error was then allowed by its Chief Justice.

The assignments of error attack the validity of the statute, specifying as grounds of the attack that the statute offends the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States and also the commerce clause of the Constitution.

Armour & Company is a New Jersey corporation. It is a packer of certain pork products and has packing plants where it produces lard as an incident to its business in Illinois, Missouri, Iowa and Nebraska. It has no plant in North Dakota but has a branch office establishment in the City of Fargo in that State, to which its goods are shipped in car load lots to be distributed therefrom. The branch at Fargo is under the charge of a local manager.

In October, 1911, the State Food Commissioner went to the company's establishment at Fargo and asked to purchase three pounds of lard. He was sold a pail containing two pounds and six ounces. It was upon this sale as a violation of the statute that the information was filed and for which the Armour Company was convicted and sentenced.

The Supreme Court considered the statute as but a development of other laws passed in the exercise of the

police power of the State to secure to its inhabitants pure food and honest weights, questions which the court thought were "inseparably allied and any argument advanced upon one applies equally to the other." And the court said as the law was drafted by the Pure Food Commission, it might be reasonably assumed, "after twelve years of observation and study" and, further, that "the expert who drafted the law, the legislature who passed it and the Governor who approved it, all thought necessity existed for the measure. If we did not agree with all those, we might well hesitate to say that there was absolutely no doubt upon the question, but in fact a majority of this court believes the law not only reasonable, but necessary, and this belief is founded on the evidence in this case and upon facts of which this court can take judicial cognizance."

The court, by these remarks, expressed the test of a judicial review of legislation enacted in the exercise of the police power, and in view of very recent decisions it is hardly necessary to enlarge upon it. We said but a few days ago that if a belief of evils is not arbitrary we cannot measure their extent against the estimate of the legislature, and there is no impeachment of such estimate in differences of opinion, however strongly sustained. And by evils, it was said, there was not necessarily meant some definite injury but obstacles to a greater public welfare. Nor do the courts have to be sure of the precise reasons for the legislation or certainly know them or be convinced of the wisdom or adequacy of the laws. *Rast* v. *Van Deman & Lewis, ante,* p. 342; *Tanner* v. *Little, ante,* p. 369. It only remains to apply to the present case the principles so announced.

Lard is a very useful product and its many purposes are set forth in the testimony. It was originally sold in the State only in tierces and tubs, that is, in bulk. A demand arose for smaller and more convenient packages and the

Armour Company and other packers responded to that demand and put their lard in three, five and ten pound pails, gross weight, the net weight of lard at first having no indication but subsequently, in obedience to the state laws, being indicated by labels, and in the present case by a small label at two pounds and six ounces. The practice of selling by gross weight is a continuation of the practice of selling by bulk.

The Armour Company asserts an inviolable right in the practice as convenient and useful and free from deception. But experience does not justify such unqualified praise. The practice has its advantages, no doubt, but it is the observation of the officers of the State that it conceals from buyers their exact purchases—there is confusion as to what the price paid compensates, whether lard or tin container.

The Armour Company contests this conclusion and contends that the label upon the package, put on in observance of a law of the State passed in 1907,[1] shows the net weight of the lard, and protects the consumer from imposition while it preserves to the company a useful method of packing and a necessary freedom of business with the public. To this we reply the law of 1907 was deemed necessary to protect the purchaser against the concealment in the method of the packers, the amount of lard not being indicated. Supposedly the requirement was not adequate, and the law of 1911 was passed. However, with a comparison of the laws we have nothing to

---

[1] The law of 1907, reproducing the provision of a law passed in 1905, provided as follows:

"Ninth. If every package, bottle or container does not bear the true net weight, the name of the real manufacturer or jobbers, and the true grade or class of the product, the same to be expressed on the face of the principal label in clear and distinct English words in black type on a white background, said type to be in size uniform with that used to name the brand or producer. . . ."

do, nor need we even consider, as the Supreme Court considered, with some reluctance, that the label used by the company was a scant compliance with the law of 1907 if not an evasion of it. We need only deal with the law under review and the justification for its adoption. Evils attended the method of the company which the Food Commission of the State thought should be redressed and which the legislature reasonably believed were definite and not fanciful and in this belief passed the law. And the belief being of that character removes the law, as we have already said, from judicial condemnation; and besides there is nothing in the testimony inconsistent with it.

The testimony of the company was directed at great length to show the advantages of selling in containers over selling in bulk, and the expense to the company of the former and the additional expense which the law would require. And meeting the objection that the company fixed the price of the lard by the gross weight of the package, in other words, as though there were three pounds instead of two pounds six ounces, it was replied that by so doing there was no profit to the company and only a reimbursement of the cost of the tin container and extra cost of putting up the lard in that style of package.

But this does not justify the practice of the company nor establish the invalidity of the law of the State. The advantages are in a sense made a snare and the testimony means no more than that the packer has built up a trade on a system of gross weight which enables it to practice a kind of deception on the purchaser that he is getting three pounds of lard when he is only getting two pounds six ounces, and enables the packer to pay for the container. The evil of the transaction is not in the latter but in the former, that is, in the deception. The correction of the statute is that the lard and the container shall be unequivocally distinguished and the purchaser have the

direct assurance of the quantity of lard he is receiving, knowledge of its price and the cost of the container to him, a means of estimating his purchase free from disguises or the necessity of an arithmetical estimate of what he is getting or paying for upon the market fluctuations of lard and tin. This may involve a change of packing by the company and the cost of that change, but this is a sacrifice the law can require to protect from the deception of the old method. The law is allied in principle, as the Supreme Court of the State observed, to regulations in the interest of honest weights and measures. It involves no giving up of what the company has a right to retain and the cost of the container as well after change as now can be cast upon the purchaser, he, however, being able to determine if it is worth the price he has to pay for it.

There are advantages undoubtedly in packing lard in pails, advantages to the packer and the consumer, but the advantages are not on account of selling by gross instead of by net weight. In other words, all of the advantages will be retained by a compliance with the provisions of the law, that is, by putting up the lard in one, three or five pound packages, net weight, or some multiple of those numbers. It is in the testimony that the packing company furnishes lard in net-weight pails to Park & Tilford, of New York City, that is, in weights of three, five and ten pounds, and has been doing so for a few years.

The equal protection clause of the Fourteenth Amendment is invoked by the Armour Company and the specification is that the law under review "arbitrarily and without reasonable ground therefor singles out lard from all food products" which are sold in packages, such as "prints of butter, packages of coffee, boxes of crackers, and the endless number of other products sold in package form are not included, and no natural and reasonable

ground for excluding them and in singling out lard has been suggested."

The range of discretion that a State possesses in classifying objects of legislation we may be excused from expressing, in view of very recent decisions. The power may be determined by degrees of evil or exercised in cases where detriment is specially experienced. *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 401, 411; *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157, 161. The law of North Dakota does not exceed this power.

It is objected that the law violates the commerce clause of the Constitution. This is certainly not true of the sale to Ladd. It was distinctly by retail and in the package of retail, not in the package of importation. And it is to such retail sales the statute is directed. It does not attempt to regulate the transportation to the State.

Nor do we think that the law is repugnant to the Pure Food and Drugs Act of June 30, 1906 (c. 3915, 34 Stat. 768, 780). That act is directed against the adulteration and misbranding of articles of food transported in interstate commerce. The state statute has no such purpose; it is directed to the manner of selling at retail, which is in no way repugnant to the Federal law (*Rast* v. *Van Deman & Lewis, ante*, p. 342), and the operation of that law is in no way displaced or interfered with.

*Judgment affirmed.*