## DISTRICT OF COLUMBIA *v.* SIMPSON.

---

STATUTES; REPEAL; ADULTERATION.

1. Repeals by implication are to be avoided when the two statutes by reasonable construction can be made to harmonize.
2. The Act of Congress of March 2, 1895 (28 Stat. at L. 709, chap. 164) prohibiting the bringing of milk into the District of Columbia without first obtaining a permit from the health officer of the District of Columbia, was intended primarily to regulate the source of supply of such milk and to secure sanitary conditions and surroundings, and was not repealed by the Pure Food and Drugs Act of Congress of June 30, 1906 (34 Stat. at L. 768, chap. 3915, Comp. Stat. 1916, sec. 8717), which is operative when such milk reaches the District and subjects it to the tests of misbranding and adulteration.

No. 3073. Submitted October 2, 1917.   Decided November 12, 1917.

HEARING on a certification by the Police Court of the District of Columbia of a proceeding against a milk dealer for bringing milk into the District of Columbia without a permit from the health officer of the District of Columbia, to determine whether the prosecution should be by the District of Columbia or by the United States.

The COURT in the opinion stated the facts as follows:

A complaint was filed in the police court of the District of Columbia charging that defendant, William A. Simpson, "did bring into the District of Columbia for sale, milk without a permit from the health officer of said District so to do," in vio-

lation of the provisions of the Act of Congress of March 2, 1895 (28 Stat. at L. 709, chap. 164).

Defendant demurred to the information on the ground, as stated, "that there is no law making the allegations in the information an offense in the District of Columbia." On motion of the corporation counsel the case was duly certified to this court to determine whether the cause "should be prosecuted in the name of the District of Columbia for violation of sec. 2 of the Act of Congress approved March 2, 1895, or in the name of the United States under sec. 2 or sec. 7 of the Act of Congress approved June 30, 1906, and known as the Pure Food Law."

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Frank H. Stephens,* Assistant, for the District of Columbia:

*Weigand* v. *District of Columbia,* 22 App. D. C. 569, brought up a conflict between the Act of 1895 and the Act of 1898. The court held that sec. 13 of the former act, providing for the analysis of milk in the presence of witnesses, was impliedly repealed by secs. 4, 6, 7, and 8 of the latter act. Also that sec. 7 of the Act of 1895 was repealed by the Act of 1898, changing the marketable standard of milk.

*District of Columbia* v. *Burns,* 32 App. D. C. 203, was an appeal from the police court, after there had been a finding of not guilty in that court, where there had been a ruling that the Act of 1898, fixing a standard of not less than 3½ per cent of butter fat in marketable milk, was repealed by the Act of 1906. This court refused to disturb the judgment of the police court, because there had been a finding of not guilty in that court, and, without deciding, suggested that the Act of 1898 had not been repealed in the respect referred to. This view of the law seems to be confirmed by a recent decision of the Supreme Court of the United States in *Hutchinson Ice Cream Co.* v. *Iowa,* decided December 4, 1916, No. 3, Advanced Sheets p. 28, where the law of the State fixing the standard of butter fat to be contained in ice cream was sustained.

*District of Columbia* v. *Coburn,* 35 App. D. C. page 325, involved the question of process butter. In this case it was held

that provisions of the Act of 1898 were repealed by those of 1906, where there was inconsistency between the two.

*Dade* v. *United States,* 40 App. D. C. 94, sustained a prosecution under the Act of 1906, where milk contained bacteria of the colon group, and was shown to be filthy, decomposed, and adulterated.

In *Savage* v. *Jones,* 225 U. S. 501, the court sustained the statute of the State of Indiana, requiring Savage to register a preparation for domestic animals known as "international stock food," under the claim that it was a prepared or patent medicine within the meaning of the revenue laws.

In *Sligh* v. *Kirkwood,* 237 U. S. 52, 62, the court upheld the statute of Florida forbidding the shipment of grains and citrus fruits.

In *Armour* v. *North Dakota,* 240 U. S. 510, a State law requiring lard to be put up in pails of certain net pounds weight was upheld as not repugnant to the Act of 1906.

In *Hutchinson Ice Cream Co.* v. *Iowa,* supra, the State law fixing the standard of pure food for ice cream was sustained.

*Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, involved the statute of Iowa, providing for the inspection of concentrated foodstuffs and fees prior to being placed upon the market. See also *United States* v. *Rinchina,* District Court for the 3d District of Arizona, October 21, 1911, N. J. No. 1450.

The decision of other Federal courts and of the Attorney General was to the same effect.

*United States* v. *Rinchini,* supra, held that there could be no prosecution under the Act of 1906 for selling ice cream containing less than 15 per cent of butter fat, there being no law or regulation in the United States providing a standard for ice cream. *Savage* v. *Scovell,* 171 Fed. 566, involved the statute of Kentucky, calling for the disclosure of the ingredients of stock food.

In 26 Ops. Atty. Gen. 166, Charles J. Bonaparte, then Attorney General, rendered an opinion, February 23, 1907, in which he ruled that the Act of March 2, 1897, relating to the inspection of tea, was not in conflict with the Pure Food Law of 1906.

In 26 Ops. Atty. Gen. 311, decided July 7, 1907, the Attorney General held that the Drugs and Medicine Act of 1848 was not inconsistent with the Act of 1906.

In 30 Ops. Atty. Gen. 164, decided May 24, 1913, by J. C. McReynolds, then Attorney General, it was held that the Meat Inspection Law of June 30, 1906, was not inconsistent with the Food and Drugs Act passed on the same day. This ruling bears an important analogy to the case at bar, as the Meat Inspection Act provided for the inspection of meat before being put upon the market as the Act of 1895 seeks to protect the source of milk supply before that article is brought into the District.

*Mr. Matthew E. O'Brien,* for the defendant:

*Boston* v. *Shaw,* 1 Met. 130: "When a new power, and also the means of executing it, are given by statute, that power can be executed in no other way."

*Elder* v. *Bemis,* 2 Met. 599: "And for the violation of the prohibition in the statute, the plaintiff is entitled only to the statute remedy."

*Ward* v. *Severance,* 7 Cal. 126: "Where a new right is introduced by statute, the party complaining of its violation is confined to the statutory remedy, so far as the courts of common law are concerned."

*Ellis* v. *Paige,* 1 Pick. 43: "It is a well-settled rule that when any statute is revised or one act framed from another, some parts being omitted, the parts omitted are not revived by construction, but are to be considered annulled."

*Nichols* v. *Squire,* 5 Pick. 168: "And where the legislature imposes a second penalty for an offense, whether smaller or larger than the former one, a party cannot be allowed to sue on one or the other at his option."

*French* v. *Spencer,* 21 How. 228, 16 L. ed. 97: "And then, what is the rule? One that cannot be departed from without assuming on the part of judicial tribunals legislative power. It is, that where the legislature makes a plain provision without exception, the courts can make none."

*United States* v. *Tynan,* 11 Wall. 153.

"But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act."

*Callan* v. *District of Columbia,* 16 App. D. C. 275: "While repeal by implication is not favored, where the latter enactment covers the whole subject-matter of the previous law and is plainly intended to prescribe the only rule which shall govern, repeal by implication is just as effective as express repeal."

*Fulton* v. *District of Columbia,* 2 App. D. C. 431: "When a later act covers the whole subject of a former one, especially when the later act contains new provisions, the later act will be construed to repeal the former."

*United States ex rel. Bride* v. *Macfarland,* 18 App. D. C. 120: "Where the later of two acts, though not in express terms repugnant, covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first, it will operate as a repeal of that act."

*Newman* v. *United States,* 41 Wash. L. Rep. 734: "A statute relating to the same subject-matter and intended as a substitute for it, if valid, has the effect of repealing the former act."

*District of Columbia* v. *Coburn,* 35 App. D. C. 324: "While repeals by implication are not favored, where there is a clear repugnancy between the later and earlier statutes, they cannot subsist together; and so, held, that the provision of the Act of June 30, 1906, 30 Stat. at L. 768, relative to the sale of adulterated or process butter, supersedes the provision of the Act of February 17, 1898, relating to the same subject."

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is conceded that, if the action can be sustained under the Act of 1895, it was properly brought in the name of the District of Columbia. But it is urged by counsel for defendant that the Act of 1895 was, by implication, repealed by the Act of Congress

of June 30, 1906 (34 Stat. at L. 768, chap. 3915, Comp. Stat. 1916, sec. 8717), commonly known as the Pure Food and Drugs Act. Of course, if this be true, the action, if maintainable under the later act, should be prosecuted in the name of the United States.

The Act of 1895 forbids the bringing or sending of milk into the District of Columbia for sale without first procuring a permit from the health officer of the District. The act requires that the application for the permit shall be made in writing, accompanied by a full description of the dairy or farm, and a sworn statement as to the physical condition of the cattle. If the showing made is satisfactory to the health officer, a permit is issued on condition that none but pure and unadulterated milk shall be brought into the District by the licensee. In the management of the dairy the licensee is governed by the regulations promulgated by the District not in conflict with the laws of the jurisdiction where the dairy is located. The act further provides that "said dairy or dairy farm may be inspected at any time without notice by the health officer of the District of Columbia or his duly appointed representative: Provided, That said permit may be suspended or revoked at any time without notice by said health officer whenever the milk supply from said dairy or dairy farm is exposed to infection by Asiatic cholera, anthrax, diphtheria, erysipelas, scarlet fever, smallpox, splenic fever, tuberculosis, typhoid fever, typhus fever, or yellow fever, so as to render its distribution dangerous to public health." The act also prohibits persons who have been exposed to the above diseases from working in or about such dairy.

The Pure Food and Drugs Act of 1906, in so far as it pertains to the District of Columbia, provides "that the introduction into ＊ ＊ ＊ the District of Columbia from any ＊ ＊ ＊ State or territory ＊ ＊ ＊, or from any foreign country, ＊ ＊ ＊ of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited; and any person who shall ship or deliver for shipment from any State or territory to ＊ ＊ ＊ the District of Columbia, ＊ ＊ ＊ or who shall receive in ＊ ＊ ＊ the District of Columbia from any ＊ ＊ ＊ State or territory ＊ ＊ ＊, and having so received, shall deliver, in original un-

broken packages, for pay or otherwise, or offer to deliver to any other person, any such article so adulterated or misbranded within the meaning of this act, or any person who shall sell or offer for sale in the District of Columbia * * * any such adulterated or misbranded foods or drugs, shall be guilty of a misdemeanor."

The act then forbids the traffic in foods where the article has been reduced in strength, where there has been substitution for the article, where a valuable constituent of the article is concealed, where poisonous or deleterious ingredients have been added, or when the article consists "of a filthy, decomposed, or putrid animal or vegetable substance."

The statutes are not in conflict. The Act of 1895 looks primarily to the regulation of the source of supply, while the Act of 1906 deals with the sale of misbranded and adulterated foods. The former act seeks to prevent the production of adulterated food, and the later act deals with it when placed upon the market. The former aims at the regulation of the sources of supply to secure sanitary conditions and surroundings; the later operates when the milk reaches the District and is subject to the tests as to misbranding and adulteration. Repeals by implication are to be avoided when the two acts, by reasonable construction, can be made to harmonize. The two statutes here in question are harmonious, and the enforcement of one in no way interferes with the enforcement of the other. This case is ruled in principle by *Savage* v. *Jones,* 225 U. S. 501, 56 L. ed. 1182, 32 Sup. Ct. Rep. 715, and *Armour & Co* v. *North Dakota,* 240 U. S. 510, 60 L. ed. 771, 36 Sup. Ct. Rep. 440, Ann. Cas. 1916D, 548.

The action was properly brought in the name of the District of Columbia, and the cause is remanded to the Police Court for further proceedings not inconsistent with this opinion.

A motion for rehearing was denied November 16, 1917.