## AMERICAN WOOD PRODUCTS CO. et al. v. CITY OF MINNEAPOLIS et al.

District Court, D. Minnesota, Fourth Division. September 8, 1927.

1. Municipal corporations ⚖=601—Zoning ordinance must be justified on ground of public welfare.

A city zoning ordinance must find its justification in some aspect of the police power, on the ground that it is for the public welfare.

2. Municipal corporations ⚖=601—In determining power to forbid erection of building of particular kind or for particular use, court must consider circumstances and locality.

The question whether power exists to forbid the erection of a building of a particular kind or for a particular use is to be determined, not by an abstract consideration of the building or

of the thing considered apart, but by considering it in connection with the circumstances and the locality.

**3. Municipal corporations 63(1)—Legislative classification for zoning purposes must control if validity be fairly debatable.**

If the validity of legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.

**4. Municipal corporations 601—That zoning ordinance depreciated value of property to one-fifth or less held not to render it invalid (Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364).**

Zoning ordinance, establishing "multiple dwelling" district in territory wherein there were factories, and forbidding additions to the factories or erection of other factories, enacted under Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364, *held* not invalid because the property was worth only from one-fifth to one-eighth as much for "multiple dwelling" purposes as for industrial purposes.

**5. Courts 366(8)—Zoning ordinance, upheld by highest state court, will be declared invalid by federal court only when palpably unjustified as police measure.**

Action of local legislative authority in enacting zoning ordinance especially where upheld by the highest court of the state whose people are directly concerned, will be interfered with by federal court only when it is plain and palpable that it has no real or substantial relation to public health, safety, morals, or to the general welfare.

**6. Constitutional law 296(2)—Municipal corporations 601—Zoning ordinance, forbidding additions to factories or new factories in "multiple dwelling" district, held valid exercise of police power and not to deny due process of law (Const. Amend 14; Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364).**

City zoning ordinance, creating district known as "multiple dwelling" district and forbidding the erection therein of additions to factories or of new factory buildings, enacted under Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364, *held* a valid exercise of police power and not to deny due process of law, contrary to Const. Amend. 14, and to the Constitution of the state of Minnesota; it not being plain and palpable that the restrictions had no real or substantial relation to public health, safety, morals, or to the general welfare.

**7. Constitutional law 225(1)—Zoning ordinance forbidding additions to factories or new factories in "multiple dwelling" district held not to deny equal protection of the law (Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364).**

City zoning ordinance, creating district known as "multiple dwelling" district and forbidding the erection therein of additions to factories or of new factory buildings, enacted under Laws Minn. 1921, c. 217, § 1, as amended by, Laws Minn. 1923, c. 364, *held* not invalid as denying equal protection of the law, though nearby property might be used for light industry; the validity of the legislative classification being fairly debatable.

**8. Eminent domain 2(1)—Zoning ordinance, forbidding additions to factories or new factories in "multiple dwelling" district, held not invalid as taking property for public purpose without compensation (Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364).**

City zoning ordinance, creating district known as "multiple dwelling" district and forbidding the erection therein of additions to factories or of new factory buildings, enacted under Laws Minn. 1921, c. 217, § 1, as amended by Laws Minn. 1923, c. 364, *held* not invalid as taking property therein for a public purpose without just compensation, contrary to the Constitution of the state of Minnesota.

In Equity. Suit by the American Wood Products Company and others against the City of Minneapolis and another. Bill of complaint dismissed.

George T. Simpson, of Minneapolis, Minn., for complainants.

Neil M. Cronin and R. S. Wiggin, both of Minneapolis, Minn., for defendants.

JOHN B. SANBORN, District Judge. The evidence was taken, the case argued and held under advisement, awaiting the decision of the United States Supreme Court in cases involving the validity of zoning ordinances generally, and was finally reargued and submitted on the 1st day of September, 1927.

The action is, in effect, a consolidation of four separate actions. The complainants are all residents of and property owners in the city of Minneapolis. Some forty-five years ago, there was constructed on the east bank of the Mississippi river by the Chicago, Milwaukee & St. Paul Railway Company a branch line of railroad connecting what is known as the Milwaukee Short Line with the line of the Great Northern to the north. This branch line is entirely within the city limits of Minneapolis. At the time it was constructed, the part of the city through which it ran was almost entirely undeveloped and largely uninhabited. This line of track is known as the "East Side spur." During recent years, it has been heavily used because of the business routed over it from connecting lines of the Milwaukee and also because of the industries which have grown up beside it, particularly near its northern terminus.

The complainant American Wood Products Company located on the easterly side of this spur near its southern terminus in 1913 and established a wood-working factory. At the time of its location, an ordinance of the city of Minneapolis designated

this property for industrial use. The complainant has substantial factory buildings upon its property, has built up a successful and growing business, and needs to expand its facilities. On April 7, 1924, the city of Minneapolis passed a zoning ordinance restricting the district within which this property is located for multiple dwellings. The effect of this ordinance was not to prohibit the existing use of the factory of the American Wood Products Company, but to prevent the use of any of its unimproved property for the purpose of building other factory buildings or additions to its present factory. The complainant applied to the building inspector of the city of Minneapolis for a permit to erect an addition to its factory, which was refused by him because of the ordinance. The highest and most valuable use to which the real estate owned by the complainant may be put is industrial use, because of the fact that it is situated on the spur track of the Milwaukee Road. For the same reason, it has little value as a site for multiple dwellings, and the effect of the designation made by the zoning ordinance is to greatly reduce the value of the complainant's property. The property contains some 32,000 square feet, or five city lots, and there is evidence which would justify the conclusion that it was worth about $12,800 for industrial purposes, and not to exceed $1,500 for multiple dwelling purposes, that the present buildings on the property are worth in the neighborhood of $22,000, and that these buildings are useful only for industrial purposes and cannot be used for any other.

The complainant T. Benson owns vacant trackage property upon this same spur, north of the property of the American Wood Products Company and on the same side of the track. He has applied for a permit for a building to be used as a factory. His application was denied because of the ordinance. His property is also substantially more valuable for industrial purposes than for multiple dwelling purposes, and the effect of the ordinance as to him is to seriously depreciate the value of his property. He has some eighteen lots, containing 90,000 square feet, and the evidence most favorable to him would justify a conclusion that it was worth some $36,000 for industrial purposes, and not over $5,400 for multiple dwelling purposes.

The property of the complainant Northwestern Feed Company also contains about 90,000 square feet, and has upon it a building used as a feed mill and for the storage of feed and grain, which cost about $30,000.

It is trackage property also on the East Side spur, to the north of the property of the complainant T. Benson, and on the same side of the track. The evidence most favorable to the complainant would indicate the value of this property for industrial purposes to be $40,500, and possibly $3,600 for multiple dwelling purposes. The ordinance has the same effect upon it which it has upon the property of the American Wood Products Company. The complainant Northwestern Feed Company also has applied for a permit for a building to increase its facilities, which was refused because of the zoning ordinance, and the evidence indicates that, by reason of the fact that it has not been able to increase its plant, it was obliged to spend some $30,000 during the year 1925 for additional storage space in connection with its business. The evidence also shows that almost directly to the west and across the track is property of much the same class and character, which is zoned as "light industrial," and which is occupied and used by an oil company for the purpose of storing oil and gasoline.

The property of the complainant Lyle Culvert & Road Equipment Company is not directly on the tracks of the East Side spur, but is close to them, and there is a switch owned by it which connects it with the spur. It has upon it no substantial improvements, and is, in effect, vacant and unimproved land. Like the property of the other complainants, its most valuable use would be for industry, and it has a very substantially less value for other uses. It comprises eighteen lots, which this complainant values for industrial purposes at $50,000, and not to exceed $3,600 for multiple dwelling purposes. The side track into the property was built by the complainant at a cost of $4,000, in anticipation of industrial development. It also has applied to the building inspector of the city of Minneapolis for a permit to establish a factory upon its property, which also has been refused because of the zoning ordinance. The effect of the ordinance upon the value of its property is substantially the same as it is with respect to the property of the other complainants.

In my judgment, the value of the property of the various complainants for industrial purposes is from five to eight times as great as it would be for dwelling house purposes, because, while the tracks of the Milwaukee Railway Company are an advantage to industry, it is a well-known fact that people do not care to live on premises directly adjoining the heavily operated tracks of a

AMERICAN WOOD PRODUCTS CO. v. CITY OF MINNEAPOLIS 443

railroad. The noise, the dirt, the danger to children, directly affect the value of such property for such a use.

The general situation of this property is a peculiar one. Slightly to the east lies the city limits of the city of St. Paul, and the use of property slightly to the east and in St. Paul is a heavy industrial use, and it is part of what is known as the Midway District. To the north, University avenue is an industrial street, and north of that and east of the spur, the territory is given up largely to industry. To the west of this property and between the spur and the Mississippi river, the property is mainly residential in character, and it is but a short distance from the River boulevard, which is devoted principally to handsome single residences. Between the spur and the city limits of the city of St. Paul, in the district where the complainants' properties are situated, the territory is also largely residential, and there has been no considerable development of industry.

The University of Minnesota is located in the city of Minneapolis on the east side of the Mississippi river, within a short distance of the district in which the complainants' properties lie. Within recent years there has been a tremendous growth of that institution, and the housing problem for the faculty and students has increased. Much of the property which formerly was used for dwelling houses near the University has been taken over by the state, the dwelling houses removed, and University buildings built. It is, of course, necessary that there should be a district surrounding the University for the housing of those who are connected with it, and the problem is one which the city of Minneapolis has to meet. The evidence in this case shows that the planning commission, which formulated the plan for the zoning of the city, first recommended that the property of the complainants be zoned as "light industrial" property. It also indicates that the Board of Regents of the State University desired to have no further increase of industry along the East Side spur in the locality where the complainants have their property, and that it was probably due to their attitude that this property was finally zoned as "multiple dwelling" property.

The complainants have brought this suit, asking the court to declare that the acts of the Legislature, pursuant to which the zoning ordinance of Minneapolis was passed, are void; that the ordinance has the effect of depriving the complainants of their property without due process of law, contrary to

articles 5 and 14 of the Constitution of the United States, and to the Constitution of the state of Minnesota; that it deprives the complainants of the equal protection of the law; and that it is so unreasonable as to constitute a taking of the complainants' property for a public purpose without just compensation, contrary to the Constitution of the United States and of the state of Minnesota.

Chapter 217, Laws of Minnesota 1921, provided that, for the purpose of promoting the public health, safety, order, convenience, prosperity, and general welfare, any city in the state of Minnesota having more than 50,000 inhabitants might, by ordinance, regulate the location, size, and use of buildings therein, might make different regulations for different districts thereof, and might acquire or prepare and adopt a comprehensive city plan for the city or any portion thereof for the future physical development and improvement of the city, and might thereafter alter the regulations or plan; such alterations, however, to be made only after the affirmative vote of a majority of the members of the governing body.

In 1923, this chapter was amended by chapter 364, Laws of Minnesota for 1923, so that the alterations of the plan might only, be made "after two-thirds of the property owners within 100 feet of the real estate affected acquiesced therein and after the affirmative vote in favor thereof of two-thirds of the members of the governing body of such city."

It is contended that the Enabling Act, as amended, is void because property owners are given some voice in the matter of making alterations in the zoning plan, which is purely a legislative matter, and that therefore there is an unauthorized delegation of legislative power. The city's position is that the acquiescence of the property owners is a mere jurisdictional requirement, and is no different than as though the law provided that such alterations should be made only upon application of certain interested property owners. It is unnecessary to decide this question, however, because, if chapter 364, Laws of 1923, is invalid, there is still left chapter 217, Laws of 1921, which contains ample authority for the ordinance in question.

[1] Since the decision in the case of Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, by the Supreme Court of the United States, any question as to the constitutionality of such a zoning ordinance as is before the court in this

case, "in its general scope," has been laid to rest. The constitutionality of this very ordinance was sustained in the case of Berry v. Houghton, 47 S. Ct. 474, 71 L. Ed. ——. In the Village of Euclid Case, Mr. Justice Sutherland, speaking of such ordinances, says (page 387 [47 S. Ct. 118]):

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities."

[2, 3] The court then goes on to say (page 388 [47 S. Ct. 118]):

"Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. Sturgis v. Bridgeman, L. R. 11 Ch. 852, 865. A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."

See, also, Zahn v. City of Los Angeles, 47 S. Ct. 594, 71 L. Ed. 1074.

[4] The only question in this case, then, is whether the ordinance with respect to the complainants' property is clearly arbitrary and unreasonable, so that it amounts to an improper exercise of the police power and the taking of the property of the complainants without due process of law and without compensation. The mere fact that the ordinance is harsh and seriously depreciates the value of the complainants' property is not enough to establish its invalidity. The case of Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927, presents an extreme case of individual hardship caused by the exercise of the police power, and yet there the ordinance which worked such hardship was sustained. [5] It cannot be said that the plants of the American Wood Products Company and the Northwestern Feed Company, or the proposed factories of Benson and the Lyle Culvert & Road Equipment Company are or would be nuisances in the offensive sense of that word, and, after all, no matter how undesirable they are or might be in a residence section, they could add little to the offensiveness of the East Side spur. They are, however, of much the same character as the brick plant in the Hadacheck Case.

My feeling about the situation is that, while the public convenience—or at least the convenience of that portion of the public living in the section of the city where these properties lie—authorized the zoning of the property as "multiple dwelling," the ordinance has seriously affected the value of this property, and is, from a moral standpoint at least, an unjust and unfair way for the city to limit the use of this property. Under chapter 128, Laws of 1915 (section 1618, etc., General Statutes 1923), the city of Minneapolis could have established a restricted residence district to include this property and could have secured to the complainants just compensation for any injury done. The police power has in this instance been used for the purpose of depriving the complainants of the most valuable use of their property, for the public benefit and convenience, without compensation. As a matter of justice and good morals, it would seem that a city should pay for damages occasioned by an ordinance of this kind, where no substantial present injury is being done to the public by the existing use, and where the classification prohibiting the use is largely a matter of convenience and not of necessity.

The theory of zoning ordinances is good. In my opinion, in practical operation, they must almost necessarily give far too little consideration to the rights of many individual property owners, and will in many cases, in practical effect, seriously depreciate the value of property, for which depreciation an owner, in common decency, should be compensated either by the municipality or by those whose property is specially benefited.

It is evident, however, that zoning ordinances which, in theory at any rate, are carefully prepared by planning commissions and adopted after careful study by city councils, will not be benefited by having the judges of the federal courts substitute their judgment for that of the legislative bodies and attempt to revise them with respect to individual cases. See Zahn v. City of Los Angeles, supra. Because of their very nature, there have got to be lines drawn which are more or less arbitrary. Who, for instance, can tell with any degree of certainty where

a "single dwelling" district should end and a "multiple dwelling" district begin, or what the limits of a "light industrial" district should be or the limits of a "heavy industrial" district?

The attitude which the Supreme Court takes in connection with ordinances of this general character is clearly shown in the case of Cusack Co. v. Chicago, 242 U. S. 526, 530, 37 S. Ct. 190, 192 (61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594), in which it was said:

"The principles governing the exercise of the police power have received such frequent application and have been so elaborated upon in recent decisions of this court, concluding with Armour & Co. v. North Dakota, 240 U. S. 510, 514 [36 S. Ct. 440, 60 L. Ed. 771, Ann. Cas. 1916D, 548], that further discussion of them would not be profitable, especially in a case falling as clearly as this one does within their scope. We therefore content ourselves with saying that, while this court has refrained from any attempt to define with precision the limits of the police power, yet its disposition is to favor the validity of laws relating to matters completely within the territory of the state enacting them, and it so reluctantly disagrees with the local legislative authority, primarily the judge of the public welfare, especially when its action is approved by the highest court of the state whose people are directly concerned, that it will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare. Jacobson v. Massachusetts, 197 U. S. 11, 30 [25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765]. And this, for the reasons stated, cannot be said of the ordinance which we have here."

[6-8] In spite of the fact that I think that the city has dealt unjustly with these complainants, and particularly the American Wood Products Company and the Northwestern Feed Company, who had improved their property long prior to the going into effect of this ordinance, and who had no doubt helped to build up the section of the city in question, I cannot say that it is "plain and palpable" that the restrictions placed upon the use of their property by the city "has no real or substantial relation to the public health, safety, morals, or to the general welfare," or that "the validity of the legislative classification for zoning purposes" is not "fairly debatable."

It follows that the bill of complaint must be dismissed. It is so ordered.