**HARRIS COUNTY et al. v. HALL, Tax Collector.**

**No. 9910.**

Court of Civil Appeals of Texas. Galveston.

Dec. 22, 1932.

Rehearing Denied Jan. 26, 1933.

O'Brien Stevens, Crim. Dist. Atty., Sewall Myer, and Joseph S. Myers, all of Houston, R. L. Bobbitt, of Laredo, and W. A. Wade, of Dallas, for appellants.

James V. Allred, Atty. Gen., and F. O. McKinsey, Asst. Atty. Gen., for appellee.

GRAVES, Justice.

In 1929, by what is now Vernon's Ann. Civ. St. art. 6675a—1 et seq. (chapter 88, Acts Second Called Session of the 41st Legislature), the Legislature overhauled our statutes providing for the construction, maintenance, control, and support of all public highways of the state as a general system, and in section 10 of the new act (Vernon's Ann. Civ. St. art. 6675a—10) provided for the apportionment of the revenues derived for those purposes from a state-wide franchise tax, equally and uniformly levied upon all motor vehicles using such highways, in whatever counties registered for that privilege, in this way:

Sec. 10. "(Apportionment of funds)

"On Monday of each week each County Tax Collector shall deposit in the County Depository of his county to the credit of the County Road and Bridge Fund an amount equal to one hundred (100%) per cent of net collections made hereunder during the preceding week until the amount so deposited for the current calendar year shall have reached a total sum of Fifty Thousand ($50,000.00) Dollars.

"Thereafter, and until the amount so deposited for the year shall have reached a total of One Hundred Seventy-five Thousand ($175,000.00) Dollars he shall deposit to the credit of said Fund on Monday of each week an amount equal to fifty (50%) per cent of collections made hereunder during the preceding week.

"Thereafter, he shall make no further deposits to the credit of said Fund during that calendar year. All collections made during any week under the provisions of this Act * * * in excess of the amounts required to be deposited to the credit of the Road and Bridge Fund of his county shall be remitted by each County Tax Collector on each Monday of the succeeding week to the State Highway Department * * * the monies so placed to the credit of the Road and Bridge Fund of a county * * * shall be used for the construction and maintenance of lateral roads in such county. * * * All funds allocated to the counties by the provisions of this Act * * * may be used by the counties in the payment of obligations, if any, issued and incurred in the construction or the improvement of all roads, including State Highways of such counties and districts therein; or the improvement of the roads comprising the County Road system."

As its terms disclose, neither does this statute elsewhere, nor in its quoted section 10, designate nor directly undertake to create any classes for any purpose at all, as between the various counties as a whole, but merely provides, in effect, that, of the franchise taxes mentioned, which, as stated, are levied alike against all automobiles using the

public roads of the state and collected from the owners thereof in the counties where they register them, there is to be deposited to the credit of any county's "Road and Bridge Fund" that accumulates so much under the method prescribed for the year a maximum amount of $175,000 of all such sums as are thus collected there; any excess over that total to be remitted to the state highway commission. In resulting operations under that apportionment provision, it has come about that only the five largest counties in the state, Harris, Bexar, Dallas, Tarrant, and Jefferson, collect enough of such taxes for the required time to attain this $175,000 rank. Of the remaining counties, 195 do not collect at all more than $50,000, hence all of their returns are so locally credited. This leaves about 54 counties of the state, whose resulting status with reference to the apportionment in question was not shown.

The comparative figures for the amounts remitted by the five largest counties to the state highway commission, each of whom retained or locally credited the flat sum of $175,000, were these: Harris remitted $898,-634.09, Bexar remitted $672,373.75, Dallas remitted $855,080.85, Tarrant remitted $493,-213.41, and Jefferson remitted $169,981.64.

Appellant, Harris county—the largest county in the state for the period covered by the evidence received—in area, population, assessed property valuation, bonded debt, number of motor vehicles registered, and consequently in franchise taxes collected thereon, mainly singling out these two undisputed effects of the apportionment, that is, on the one hand, that it requires the five largest counties to remit to the state highway department all these large sums they collect for such taxes over and above the relatively small $175,000 maximum, while on the other, it permits the 195 smaller counties mentioned to keep the whole of their receipts from that source, assails that section of the statute as thereby setting up an invidious classification, not only as between the five largest counties themselves, but also as between them and the 195 smaller ones, that contravenes the Constitution of Texas in article 1, §§ 3, 17, 19, and article 8, § 1 thereof, respectively, as well as the Fourteenth Amendment to the Constitution of the United States; this for the asserted reason that, primarily, it unreasonably and arbitrarily bases the apportionment selected solely upon the amount of the motor vehicle taxes collected in the several counties, which chosen criterion can have no reasonable relation to the only objects sought to be accomplished by the provision, to wit, the pro tanto relief of the counties affected from the payment of their bonded debts and the construction and maintenance of their lateral roads; that, secondarily, its operation developed such unfairly discriminatory results among the counties, especially as between and

as affected the five largest ones, as to demonstrate that it was not enacted in response to any reasonable attempt to attain fairness, uniformity, and justice as between the counties as a whole, or as between the classes among them the Legislature thereby designedly sought to create, but as the obvious result of a deliberate intention on its part to place relatively heavier burdens on the few large counties, in order to thereby relieve entirely the greatly preponderating number of smaller ones from a duty to the state, all should share alike: that of constructing and maintaining lateral public roads within their borders.

The trial judge, on appellant's request, first submitted to a jury, as inquiries of fact, both whether or not this apportionment whereby Harris county was permitted to retain in any one year only $175,000 of the license fees collected on automobiles registered therein was, as between it and the other four of the largest counties, a "reasonable classification" and an "arbitrary classification," to which answers were returned that it was not reasonable, and was arbitrary. Later, however, on the appellee's motion, the court disregarded this verdict, and rendered judgment in the appellee's favor notwithstanding; thereby sustaining the constitutionality of the challenged section as against the attack made upon it.

■ This court approves that determination below. The question of whether this "Apportionment of funds" provision is reasonable or arbitrary in its application to Harris county might be one of fact to be determined from evidence disclosing its resulting effect upon the cost to that county of constructing, maintaining, and paying the obligations against its lateral road system. as comparable to like costs to the other four counties also alloted a $175,000 maximum of these funds, or even as comparable to that of the 195 smaller counties allotted the $50,000 maximum, if that were the test of the power of the Legislature—in providing for the construction, maintenance, control, and support of all the public highways of the state, inclusive of every county's laterals, as a general system, which the very caption of this act shows was its objective—to in good faith dispose of the revenues derived for those purposes from such a statewide, uniformly levied and collected public franchise-tax as this one; but it is not thought to be. All the public roads, comprehending state highways and county laterals alike, under the policy now obtaining in Texas toward them, belong to the state and are under the general management and control of its highway commission, subject to legislative edict, no foot of them being owned by any county or road district. R. S. article 6673; Vernon's Ann. Civ. St. art. 6674a; Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915, 916–918. This tax is not one levied upon specific property located in the different counties, but is purely one of franchise, uniformly levied and

collected on the same basis by the state itself in fostering its general public road system everywhere within its borders, in return for the privilege to all owners of motor vehicles of operating them on such public roads anywhere in the state, rather than only in the county where the cars are registered and the returns paid; neither, therefore, does any portion of the revenue thus collected in Harris, however huge its aggregate for any one year in that largest county, nor in any other county in the state, belong to such county, but the whole of it always to the state. Atkins v. State Highway Department (Tex. Civ. App.) 201 S. W. 226–229, and cited authorities.

■ So that the state, after having raised this revenue in the manner and for the expressed purpose so declared, when it came to appropriating and using the same in furtherance thereof, was dealing with its own property, and no reason occurs for not holding that its lawmaking body had plenary power in that regard, so long as it acted in good faith, regardless of whatever individual inequalities incidentally resulted from its exercise to different ones or classes of its counties; indeed, the authorities so hold. Article 2, § 1, Constitution of Texas, Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488, at page 492, Glass v. Pool, 106 Tex. 266, 166 S. W. 375, Koy v. Schneider, 110 Tex. 407, 218 S. W. 479, 221 S. W. 880, Powell v. Pennsylvania, 127 U. S. 684, 8 S. Ct. 992, 1257, 32 L. Ed. 253, Cooley's Constitutional Limitations, pages 216, 228, 374, 375, Middleton v. Texas Power & Light Co., 108 Tex. 110, 185 S. W. 556, Sterling P. Clark, Sheriff, v. R. W. Finley, Comptroller, 93 Tex. 171, 54 S. W. 343, Dallas Gas Co. v. State (Tex. Civ. App. writ of error refused) 261 S. W. 1063, Marrs v. Mumme (Tex. Civ. App.) 25 S.W.(2d) 215, affirmed in St. Louis, I. M. & S. Ry. Co. v. State, 114 Ark. 486, 170 S. W. 580, 581, affirmed 240 U. S. 518, 36 S. Ct. 443, 60 L. Ed. 776, Armour & Co. v. North Dakota, 240 U. S. 510, 36 S. Ct. 440, 60 L. Ed. 771, Ann. Cas. 1916D, 548.

The vice in appellant's position seems to lie in its erroneous assumptions, first, that the sole object sought to be accomplished by this legislation was the relief of the individual counties in the discharge of their duty to the state to construct, maintain, and pay outstanding debts against their several systems of lateral roads; and second, that the consequent division of funds collected from them for that purpose was unfairly discriminatory, because not based alone upon the relative cost as between them of rendering that threefold service. But, for the reasons before given, this view of the whole matter is tangential, because back of and larger than the mere aid to the several counties contemplated in this respect as one feature of its undertaking, lay the supervening purpose of the act, as thus, in this particular, stated in its caption: "An Act providing for the construction, maintenance,

regulation, and supervision of the public highways of this State, by providing revenue therefor, by regulating, supervising, and licensing of motor vehicles used on same, and the payment of license fees on such motor vehicles, and the distribution and apportionment of such license fees."

It may be added that appellant complaining county offers no other reason for arrogating to itself the right to thus harness the discretion of the Legislature in a matter wholly within that body's province, since there is no intimation in the evidence of a lack of good faith on its part in enacting the measure; just a flat charge that it lacked the power, because it did not select this relative cost to the various counties as its basis.

It is true succeeding section 15 (Vernon's Ann. Civ. St. art. 6675a—14), rather naïvely, by way of a conditional alternative, recites that, should the method of distributing the funds so prescribed in section 10, "be declared invalid because of inequality of collection or distribution of motor vehicle license fees, then said funds shall be distributed sixty (60%) per cent to the counties making the collections and forty (40%) per cent be remitted to the State in the same manner as herein provided"; but that cannot in any way detract from the preceding official declaration of the legislative will on the subject.

■ It is easily conceivable that the Legislature in the circumstances obtaining did have an entirely reasorable, if not indeed a wisely discriminating, reason for making the number of motor vehicle registrations in the different counties the basis on which the resulting funds should be distributed between it and each of them, respectively; and, if so, the settled law is that it will be conclusively presumed to have acted in response to it. Lindsley v. Natural Carbonic Gas Company, 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Dallas Gas Company v. State (Tex. Civ. App. writ of error refused) 261 S. W. 1063; Green v. State, 49 Tex. Cr. R. 380, 92 S. W. 847; Mumme v. Marrs, 120 Tex. 383, 40 S.W.(2d) 31.

For instance, it is at least thinkable that, in contemplating the establishment and nurture of a general system of public highways throughout or in different directions across the state as a whole, and taking into consideration not only the obviously greater ability over the smaller ones of the few largest counties, by reason of more wealth and better strategical location for the capture of commerce, among which appellant, by the evidence herein heard, and by common knowledge if not also within judicial cognizance, stood pre-eminent, to care for the lateral roads within their borders, but also the equally known fact of their much wider and far more profitable use of such highways than the poorer and smaller counties, the Legislature deemed it good policy in the interest of all its

people to thus so marshal these assets of the state to the end that, out of a proven abundance flowing in to the former, the latter might be furnished needed aid in carrying their part of the burden that brought in return beneficial service to both. In fact, other provisions of the act itself may be fairly construed as presaging such a purpose, because it expressly requires that these revenues shall all be used, not to build roads in the small counties for their use, but to maintain state highways, except in instances where the highway department is short of funds, when it may be used to match federal aid.

■ And if such a question of policy was entertained, its solution was one exclusively for the Legislature. Clark, Sheriff, v. Finley, Comptroller, and other authorities cited supra.

Further discussion becomes unnecessary, since these conclusions determine the merits of the appeal. The judgment will be affirmed.

Affirmed.